RAÚL R. LABRADOR
ATTORNEY GENERAL

JAMES E. M. CRAIG, ISB #6365
Chief, Civil Litigation and
Constitutional Defense

AARON M. GREEN, ISB #12397
KYLE D. GRIGSBY, ISB #10709
Deputy Attorneys General
Office of the Attorney General
P. O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
james.craig@ag.idaho.gov
aaron.green@ag.idaho.gov
kyle.grigsby@ag.idaho.gov

*Attorneys for Defendants Members
of the Idaho Board of Medicine and
42 County Prosecutors*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| STACY SEYB, M.D., <br><br> *Plaintiffs,* <br><br> v. <br><br> MEMBERS OF THE IDAHO BOARD OF MEDICINE, in their official capacities; *et al.*, <br><br> *Defendants.* | Case No. 1:24-cv-00244-BLW <br><br> **CONSOLIDATED REPLY IN SUPPORT OF DEFENDANTS' MOTIONS TO DISMISS [DKT. 25, 26]** |

**INTRODUCTION**

This case rests on a theory of standing without an injured party, an as applied challenge with no application, and a merits theory that contradicts the Supreme Court's treatment of substantive due process.

Plaintiff does not have standing in his own right to challenge Idaho's abortion statutes because he has not alleged any injury to himself caused by Idaho's abortion laws. Indeed, he concedes that he is not seeking relief from the statutes as applied to himself. Dkt. 33 at 22. Lacking injury to himself, he nevertheless implies that he has standing to bring claims on behalf of an "approximate" number of past patients and hypothetical future ones. Dkt. 33-1 at ¶¶ 7, 8, 10. This is not how third-party standing works. Moreover, because he does not state specific facts for his as-applied challenge, it must be construed as a facial challenge and denied under *Dobbs*. Similarly, Plaintiff's argument from substantive due process is foundationally flawed—he does not anchor a right to abortion in the text, does not provide relevant historical or precedential citation, and ultimately cannot show a right "deeply rooted in history and tradition." As for rational basis, he has not negated every potential rationale for the lines that the Idaho Legislature drew. This is fatal to a rational basis claim. The Court should dismiss this case.

**ARGUMENT**

**I. Plaintiff lacks standing.**

Plaintiff offers nothing new that demonstrates standing in his affidavit: no specific patients or circumstances are alleged, no specific facts for an applied challenge, and no personal injury. A complaint fails to satisfy Rule 8 "if it tenders

naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). Indeed, the response concedes that he has no injury and no facts to which the Court can apply the law. Dkt. 33 at 22. ("He is not . . . seeking relief from the statutes as applied to himself or specific patients."). As standing often is, this is "the whole ball game." *Cf. Murthy v. Missouri*, 144 S.Ct. 1972, 1987 (2024).

### A. Dr. Seyb has not connected the county prosecutors and the Board of Medicine to any injury.

Under the laws challenged by Plaintiff, the Idaho Board of Medicine must wait for a conviction before they are able to take any disciplinary action against Dr. Seyb. This has been confirmed by this Court and an Idaho state district court, which both held that plaintiffs do not have standing to sue the Idaho Board of Medicine. *See Planned Parenthood Gr. Nw. v. Labrador*, 684 F.Supp.3d 1062, 1089 (D. Idaho 2023); *Adkins v. State of Idaho*, Mem. Dec. and Order on Mot. to Dismiss, No. CV01-23-14744 at 11 n.1; 12–13 (Dec. 29, 2023). Because a conviction is antecedent to any available Board action, they are not proper defendants in this challenge to a criminal law, and Plaintiff lacks standing to sue the members of the Idaho Board of Medicine.

As for the County prosecutors, Plaintiff makes no claim that he has provided an abortion in any particular jurisdiction. He vaguely gestures to "southwest Idaho," and then to "northern" and "eastern" Idaho for the residences of undifferentiated past patients. Dkt. 33-1 ¶ 9.[1] But more importantly, he admits that patients from

---

[1] Defendants object to the Court's consideration of Plaintiff's affidavit. Dkt 33-1. It is only once the moving party challenges the veracity of the Complaint and converts a

elsewhere in Idaho *travelled to* St. Luke's in Boise. *Id.* He does not allege that he has ever travelled to any other jurisdiction to perform an abortion. No threats of prosecution for abortions for 'medical indications' (whatever that means as to his patients and practice) appear either. There is quite literally zero connection between Plaintiff and any county prosecutor except that Plaintiff practices in Boise. That does not give Plaintiff standing to hail every county prosecutor and the Board into Court.

### B. Dr. Seyb lacks an individual or third-party injury.

Plaintiff cannot come into Court with no individualized injury only to sue on behalf of unknown third parties. But he tries exactly this. Despite alleging he sues on behalf of himself and third-parties, he makes no personal claim or allegation of injury—indeed, he now *repudiates* it, claiming that he is not "seeking relief from the statutes as applied to himself." *See* Dkt. 33 at 22–23; *see generally* Dkt. 33-1. In doing so, he disclaims the irreducible minimum of Article III standing whether a Plaintiff plans to invoke the rights of others *in addition to* his own or not. The injury-in-fact requirement and causation requirements "screen[ ] out plaintiffs who [are] not injured by the defendant's action." *F.D.A. v. All. Hippocratic Med.*, 602 U.S. 367, 383 (2024). Standing turns "on the nature and source of *the claim* asserted." *Warth v. Seldin*, 422 U.S. 490, 500 (1975). Here, he asserts *only* claims applicable to hypothetical future patients. *See* Dkt. 1 at 22–23. His response and attached affidavit

---

facial motion into a factual attack by attaching extrinsic evidence, that the non-moving party may submit affidavits for consideration. *See Am. Diabetes Assoc. v. U.S. Dep't of the Army*, 938 F.3d 1147, 1151 (9th Cir. 2019). If Plaintiff wanted the Court to consider additional allegations, the proper course was for Plaintiff to amend the Complaint. Nonetheless, as noted, his new allegations do not demonstrate standing.

CONSOLIDATED REPLY IN SUPPORT OF
DEFENDANTS' MOTIONS TO DISMISS [DKT. 25, 26] — 3

assert no claim on his own behalf and no injury, but "exceptions to the prudential rule presuppose a litigant who has already met the constitutional requirements." *Fleck and Assocs., Inc. v. Phx.*, 471 F.3d 1100, 1104 (9th Cir. 2006); *see also Lopez v. Candaele*, 630 F.3d 775, 792 (9th Cir. 2010) (citing *Sec'y of State Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 958 (1984)). Plaintiff's list of third-party standing cases cannot help him—every single one (see Dkt. 33 at 20) had a *first* party with an injury. Because first party standing is a prerequisite to third party standing, this is fatal.

This requirement is not abstract—it aims to prevent Courts from being asked to, "decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights." *Warth, supra*; *see also Alliance*, 602 U.S. at 381. The Court should decline to do so here.

1. *Plaintiff lacks first party standing.*

Plaintiff argues that he has first party standing based on the *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159–63 (2014) factors. He is mistaken. Plaintiff fails the first factor—he has no intention of a) engaging in specific conduct, and b) even if he did, he claims no injury to himself in not being able to perform abortions that are prohibited by Idaho law. Unlike in *Driehaus* where the petitioners "pleaded specific statements they intend to make in future election cycles," we know nothing about specific conduct by Dr. Seyb. *Id.* at 161; *accord Lopez*, 630 F.3d at 791. Without known specific conduct, there is no pre-enforcement injury. Indeed, the affidavit and response make this problem *worse*. Beyond 'medically indicated abortions,' Dr. Seyb apparently would perform abortions in cases of "serious medical conditions." Dkt. 33-

1 ¶ 3, Dkt. 33-1 ¶ 11. What does this mean? Nobody knows—it is not defined in the complaint. Without naming specific patients presently wanting an abortion, specific conditions connected to Plaintiff, or specifics about anything, Plaintiff's future conduct is "wholly conjectural." *Dreihaus*. at 163 (quoting *Golden v. Zwickler*, 394 U.S. 103, 109 (1969)).

Moreover, Plaintiff engages in some justiciability transmutation here. He argues that he would perform abortions affected with *someone else's* constitutional interest, but *Driehaus* is not a third-party standing case. Whose alleged rights would the Court vindicate if it granted Plaintiff's prayer in its entirety? Not Plaintiff's—only the interest in abortion that hypothetical patients may have at some indeterminate, undifferentiated point. *See id.* at 158 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). That's not the point of third-party standing; it is the rare exception to the rule that a party may bring only his claims to Court, and *only* after establishing his own interest. *Kowalski v. Tesmer*, 543 U.S. 125, 128 (2004). Just as third-party standing does not work without real third parties with their own claims, *id.* at 131, *Driehaus* factors do not apply without a real *first* party *injury*. Plaintiff can't jerry-rig together a named first party and unnamed third-party injury to obtain standing.

The other two factors fall away as well. Because there is no specific conduct pled, there is nothing for any statute to proscribe. *Dreihaus*, 573 U.S. at 162. Standing after all, "is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek[.]" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (citations omitted). It was Plaintiff's burden

to show an intent to engage in specific conduct proscribed by the statute, but he has not. Nor can Plaintiff articulate a threat of future enforcement for that same reason.

Further, a general "failure to disavow" doesn't meet Plaintiff's burden to show that *a specific* prosecutor will enforce the laws against *him*. *See Idaho Fed'n of Tchrs. v. Labrador*, No. 1:23-cv-00353-DCN, 2024 WL 3276835 at \*5 (D. Idaho 2024).[2] *See also* Dkt. 25-1 at 13. Plaintiff hasn't pled facts "that allow[] the court to draw the reasonable inference" that a specific defendant is liable. *Iqbal*, 556 U.S. at 678.

   2. *Plaintiff lacks third-party standing because he has no relationship to a specific patient before this court in this as-applied challenge.*

Even if Plaintiff could plead an injury, mere hypothetical third parties, *Kowalski v. Tesmer*, 543 U.S. 125, having only speculative injury, *Lee v. State of Or.*, 107 F.3d 1382 (9th Cir. 1997); *Nelsen v. King Cnty.*, 895 F.2d 1248 (9th Cir. 1990), do not suffice as third-party litigants. To have third-party standing, Plaintiff must have a sufficiently close relationship with the third party. *Kowalski*, 543 U.S. at 130. Plaintiff does not rebut these cases, both of which stand for the proposition that a Plaintiff needs specific third parties, with specific connection to the named plaintiff, and who have specific non-speculative injury, to bring a third-party action. Emphasizing that a plaintiff must have "a 'close' relationship with the person who possesses the right," the Court in *Kowalski* noted that while the attorney plaintiffs relied on the attorney-client relationship to establish closeness, a relationship with a "yet unascertained" party is no relationship at all. *Id.* at 130–31 (citation omitted).

---

[2] *Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 490 (9th Cir. 2024) is inapposite, as it concerned a case where the defendant acknowledged the legislature "clear[ly] target[ed]" the challenging party.

Similarly, to the extent that Plaintiff pleads claims on behalf of unnamed, unidentified, undifferentiated patients, he has not established that he has a close connection with any patient who in his view needs an abortion. Nor can he establish a hindrance—not knowing who the woman is, we cannot know what keeps her from Court. *See id.* Plaintiff's attempt to distinguish *Lee v. State of Oregon* fails—hypothetical patients have only speculative injury. Dkt. 33 at 21 n.6.

> 3. *The Supreme Court has clarified third-party standing.*

Plaintiff points out that—in the past—courts distorted third-party standing doctrine in abortion cases, citing specifically *June Med. Servs. L.L.C. v. Russo*, 591 U.S. 299, 318 (2020), and errs by suggesting that *Dobbs* abrogated this decision solely on other grounds. Dkt. 33 at 21. This citation does not get the Complaint out of the realm of the frivolous.[3] As *Dobbs* pointed out, "*Roe* and *Casey* have led to the distortion of many important but unrelated legal doctrines, and that effect provides further support for overruling those decisions." 597 U.S. at 286. The majority noted in particular "abortion cases have . . . ignored the Court's third-party standing doctrines." *Id.* at 286–87. The majority specifically disapproves *June Medical* for this

---

[3] First, beyond being abrogated on the point at issue, *June Medical* was only a plurality opinion. Second, the string citation is *obiter dicta* because, as the plurality acknowledged, the argument in that case was *conceded*. 591 U.S. at 317. Third, of the (now abrogated) cases in the *June Medical* string cite, only two make any effort to examine third-party standing doctrine—and those rest on district courts which found certain first party injury. *See Akron Ctr. for Reprod. Health, Inc. v. Akron*, 479 F.Supp. 1172, 1184 (N.D. Ohio 1979) ("economic harm") aff'd in part sub. nom. *Akron v. Akron Ctr. for Reprod. Health, Inc.*, 462 U.S. 416, 440 n.30 (1983); *Doe v. Bolton*, 319 F.Supp. 1048, 1052 (N.D. Ga. 1970) (physicians sue "on the grounds that [law] unconstitutionally restricts their right to practice."); j. modified, aff'd 410 U.S. 179, 188, 193 (1973). Such injury is disclaimed here. Dkt. 33 at 22.

exact reason. *Id.* at n.61. Other courts have since correctly observed that "to the extent that this Court has distorted legal standards because of abortion, we can no longer engage in those abortion distortions in the light of a Supreme Court decision instructing us to cease doing so." *SisterSong Women of Color Reprod. Just. Col. v. Gov. of Georgia*, 40 F.4th 1320, 1328 (11th Cir. 2022). Another has more specifically noted that the Supreme Court "disavowed" theories of standing like Dr. Seyb's. *All. Hippocratic Med. v. F.D.A.*, No. 23-10362, 2023 WL 2913725, at *4 n.4 (5th Cir. 2023) (unpub. order granting motion for stay pending appeal in part) (citing *Dobbs*). Here, Plaintiff purports to rely on this distortion to get into Court based on an assertion that he sues on behalf of himself and his patients (though now he disavows, apparently, any cognizable theory). This Court should follow the clear direction of the Supreme Court—there is, if it ever existed, no longer a freestanding right for Plaintiff to challenge abortion laws on behalf of unidentified, undifferentiated third parties.

## II. Plaintiff has failed to state a proper as-applied challenge.

On as-applied challenges Plaintiff misses the point. "An as-applied challenge . . . 'focuses on the statute's application to the plaintiff,' and requires the court to only assess the circumstances of the case at hand." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1203 (9th Cir. 2022) (quoting *Wells Fargo Bank, N.A. v. Mahogany Meadows Ave. Tr.*, 979 F.3d 1209, 1217 (9th Cir. 2020)). The remedy is not the *only* difference between facial and as applied challenges—as a matter of proof, "[f]acial and as-applied challenges differ in *the extent to* which the invalidity of the statute need be demonstrated." *Isaacson v. Horne*, 716 F.3d 1213, 1230 (9th Cir. 2013); *see also Wash. St. Grange v. Wash. Republican Party*, 552 U.S. 442, 444 (2008)

(reversing because arguments by respondents "rest on factual assumptions . . . that can be evaluated only in the context of an as-applied challenge"). Styling a claim an as-applied challenge does not make it so. *Wells Fargo*, 979 F.3d at 1217.

To be sure, dismissal for failure to comply with a technical pleading standard is not the result when an as-applied challenge is not really an as-applied challenge. But construing the claim as a facial challenge, and dismissal under Rule 12(b)(6) if required, *is* the result. *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010). In cases like *John Doe*, where the party claimed to seek only invalidation in a category of conditions ("to the extent it covers referendum petitions"), but nonetheless sought relief beyond the circumstances of the particular plaintiffs, plaintiffs must "satisfy [the] standards for a facial challenge to the extent of that reach." *Id.* (citing *United States v. Stevens*, 559 U.S. 460, 472–73 (2010)). Thus, if Plaintiff can't state an as-applied challenge because he seeks relief beyond his circumstances, then the scope of review changes from one in which the Court considers the law as applied to "the circumstances surrounding" a given abortion to a review "limited to the text of the statute itself." *Young v. Hawaii*,[4] 992 F.3d 765, 779 (9th Cir. 2021) (citation omitted).

---

[4] Plaintiff accuses Defendants of not "disclosing" that the en banc panel decision was vacated. Dkt. 33 at 22. Plaintiff plainly misreads Defendants' brief. Dkt. 25-1 at 20 ("cert. granted, <u>vacated and remanded</u> on other grounds . . . in light of [*Bruen*]") (emphasis added). This Court and the Ninth Circuit have since cited *Young* for the same distinction that Defendants do. *M.H. v. Jeppesen*, 677 F.Supp.3d 1175, 1190 (D. Idaho 2023); *Rodriguez Diaz*, 53 F.4th at 1203 (citing in Nov. 2022). *Young* was vacated in light of *Bruen* for failing to apply the proper Second Amendment standard, not for applying an incorrect distinction between as applied and facial challenges. *See N.Y. State Rifle & Pistol Assoc. v. Bruen*, 597 U.S. 1, 15 (2022). It remains controlling circuit precedent for the point cited. Dkt. 25-1 at 20.

Plaintiff made no attempt in the response or the affidavit to state particular facts to which the laws he challenges apply. Startlingly, he actually concedes that "he is not seeking relief as applied to himself or specific patients," but rather a 'class' of abortions. Dkt. 33 at 22. This is fatal to the premise that he seeks as-applied review. If Plaintiff is not seeking relief as to himself, then he has not brought an as-applied challenge. *See e.g.*, *Young, supra*; *Porter v. Gore*, 517 F.Supp.3d 1109, 1124 (S.D. Cal. 2021) (quoting *N.M. Youth Organized v. Herrera*, 611 F.3d 669, 677 n.5 (10th Cir. 2010) ("[An] 'as-applied' challenge to a law acknowledges that the law may have some potential constitutionally permissible applications, but argues that the law is not constitutional as applied to [particular parties].") (alterations in *Porter*). As a result, this Court's review is necessarily limited to the text of the statutes themselves—and under *Dobbs*, this Court must consider if they pass rational basis review. 597 U.S. at 301. Because *Dobbs* has already answered this, Plaintiff's as-applied challenges fail.

### III. Plaintiff's attempt at a text, history, and tradition argument fails.

Having failed to show standing—and in fact disclaiming the only basis on which he could have it—Plaintiff nonetheless spends much of the response arguing history and tradition alone support a fundamental right to abortion in unbounded circumstances that are not before this Court. *See generally* Dkt. 33 at 23–35. He is wrong. The Supreme Court held in *Dobbs* that abortion laws were to be *categorically* reviewed for rational basis as health and safety laws generally are, under the broad question of "whether the Constitution, properly understood, confers a right to obtain an abortion." 597 U.S. at 234, 300–01. But even if Plaintiff still maintains his action, there is a hard mountain to climb. Contrary to his brief, *Dobbs* and prior precedent

have set forth a methodology to use when considering whether a right is supported by *text*, history and tradition. "Constitutional analysis must begin with the 'language of the instrument,' which offers a 'fixed standard' for ascertaining what our founding document means[.]" *Id.* at 235 (quoting *Gibbons v. Ogden*, 9 Wheat. 1, 186–89 (1824) (second citation omitted)). Like the Court in *Roe*, Plaintiff is "remarkably loose in [his] treatment of the constitutional text." *Id.* (citing *Roe v. Wade*, 410 U.S. 113, 152–53 (1973)). In fact, there is no attempt to look at the text of the Constitution—indeed, they refer to a "history and tradition" argument throughout. *See e.g.*, Dkt. 33 at 23–34. This is no idle thing. *Dobbs* focuses its analysis towards determining the meaning of the word "liberty" at ratification. *Dobbs*, 597 U.S. at 240.

There is no textual support for the right to an abortion under any protected interest. But assume for the sake of argument that one of the three rights "life," "liberty," or "property" are at issue. U.S. CONST. amend. XIV, § 1. To be encompassed by, for instance, the Fourteenth Amendment's definition of "liberty," and therefore protected by the Due Process Clause, a right must be "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty." *Dobbs*, at 231 (quoting *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997)); *accord United States v. Rahimi*, 602 U.S. ___, 144 S.Ct. 1889, 1897–98 (2024).

We must ask; what right is Plaintiff seeking to establish? That is no easy task. Courts must "'exercise the utmost care whenever [they] are asked to break new ground in this [substantive due process] field' . . . lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of the Members of

this Court." *Glucksberg*, 521 U.S. at 720 (quoting *Moore v. City of E. Cleveland, Ohio*, 431 U.S. 494, 502 (1977)). "[W]e have required in substantive-due-process cases a 'careful description' of the asserted fundamental liberty interest." *Id.* at 721 (quoting *Reno v. Flores*, 507 U.S. 292, 301–02 (1993)).

Plaintiff fails to set forth a "careful description" here. There is a grab bag of medical conditions (some of which are covered by Idaho's exception) and shifting terminology. The Complaint uses a sweeping array of overlapping categories, "the right to seek treatment for serious medical needs," (Dkt. 1 ¶ 8) a "medically indicated abortion," (Dkt. 1 ¶ 121), and the list of circumstances in the prayer. The list of circumstances refers back to a non-exhaustive litany of medical conditions, many of which are, again, covered by Idaho's life exception already. The confusion is exacerbated by the reply. It reprises "serious medical need," "medically indicated abortion," while the affidavit adds "serious medical *conditions*" and abortions for medical indications that *while not presenting a risk of injury or death themselves* allegedly "expose[] [the] patient[] to *risks* of serious injury and death." Dkt. 33 at 9, 12 (emphasis added). Plaintiff proposes, not a right to abortion in life saving circumstances (as Idaho's law already has), but a right that at its broadest apparently includes any undefined 'serious medical conditions,' Dkt. 31-1 ¶ 8, or 'serious medical need,' including a mental health exception with sweeping breadth. Dkt 33 at 11, 23. This is not a clear definition, and cannot sustain a due process right.[5]

---

[5] This definitional problem excludes Plaintiff's attempt to piggyback on the right to medical treatment in prison, which is of course entirely founded on the Eighth

And this leads to the final and conclusive error. Not only is the 'right' foreclosed (whatever it may be, if it concerns abortion), not only is it ill-defined, but the evidence presented by Plaintiff is categorically different from the evidence presented in *Dobbs*. The contours of a fundamental right are based on a *clear affirmative* answer from text, history and tradition. *See e.g., Ramos v. Louisiana*, 590 U.S. 83, 89–90 (2020) (text and structure of the Constitution and "unmistakable" secondary sources demonstrated necessity of unanimous jury verdict under Sixth Amendment). But here, Plaintiff offers a couple of buckets of evidence, loosely analogizes the buckets to *Dobbs*, and believes he has minted a new right. This foundation is inadequate for any right, much less the broad one that Plaintiff invents.

Plaintiff starts with the historical state laws cited by *Dobbs*. Dkt. 33 at 24–25. This goes nowhere. Plaintiff finds no statute that indicates that potential suicide or drug use was a contemplated rationale for an abortion and no consistency with respect to a "medical indication" whatsoever. Next, Plaintiff raises the Anglo-American legal tradition by citing one English trial court from 1938. Dkt. 33 at 25–27. Post-ratification English judicial gloss on an earlier statute is perfectly irrelevant to the tradition considered by the Framers of the Fourteenth Amendment in 1868.

The American cases discussed, at best from the 1920s onward, are equally

---

Amendment's text, and the predicate of incarceration. Dkt. 33 at 32–33; *see also Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). *Estelle* assumes nothing about a pre-existing *positive* right to medical care but is an application of a *negative* right against cruel and unusual punishment of a prisoner. *Id.* at 104–05. Plaintiff's breezy analogy is similar to other challenges this court has recently rejected. *See generally Satanic Temple, Inc. v. Labrador*, No. 1:22-cv-00411-DCN, 2024 WL 357045 (D. Idaho 2024).

unhelpful. Dkt. 33 at 27–31. Plaintiff's argument that the invocation of the necessity defense in some abortion caselaw supports his view works against him. As this Court has noted, "An affirmative defense is an excuse, not an exception. The difference is not academic. The affirmative defense admits that the physician committed a crime but asserts that the crime was justified and is therefore legally blameless." *United States v. Idaho*, 623 F.Supp.3d 1096, 1109 (D. Idaho 2022). This is not evidence that a particular crime under certain circumstances was considered an *affirmative* right.

Plaintiff suggests that because there is a lack of convictions for his nebulous right, that the right exists. Dkt. 33 at 30. Even assuming the fact to be true for argument's sake, the theory is false. First, there is no "canon of donut holes" for historical due process, any more than in ordinary statutory interpretation. *See Bostock v. Clayton Cnty., Ga.*, 590 U.S. 644, 669 (2020). Said differently, the absence of one kind of evidence *against* a right is not evidence *affirming* the right. Second, Plaintiff is wrong to suggest that the absence of convictions for abortions to avoid self-harm is evidence—suicide *itself* was criminalized and a source of moral opprobrium into the 20th Century. Why would a 700 year "common-law tradition [that] has punished or otherwise disapproved of both *suicide* and assisting suicide" consider the potential for this act to be an excuse for *another* crime? *Glucksberg*, 521 U.S. 702, 711 (collecting authorities) (emphasis added). This is no evidence at all.[6]

---

[6] The final citation, a law review article, actually suggests that it would be impossible to find a historical right to a "medically indicated" abortion in the sentence before Plaintiff's quotation: "<u>Unlike</u> claims of rights to abortion . . . which had to confront *extensive state restriction of those practices* at the time of the enactment of the

In sum, Plaintiffs have no plausible basis for asserting a "deeply rooted" right to any form of abortion. Count I (and Count II at ¶ 129) fail on the merits.

### IV. Plaintiff abandons animus and loses on rational basis.

There is no attempt in the response to defend Plaintiff's claim of animus. Dkt. 1 at ¶¶ 131-32. These sub-claims should be considered abandoned and dismissed. As for arbitrariness or irrationality, the best Plaintiff can do is repeat the bare legal conclusion in his complaint. Dkt. 33 at 34-38. Again, these sub-claims do not make it to the merits analysis. Br. at Section I. And Plaintiff does not grapple well with the fact that state law governs the analysis in terms of classifications. *Planned Parenthood*, 171 Idaho at 440; *see also Raidoo v. Moylan*, 75 F.4th 1115, 1125 (9th Cir. 2023). But assuming his classifications, women who suffer from mental illness or behavioral health disorders can receive treatment other than abortion or be otherwise prevented from engaging in self-harm; that is what distinguishes *self*-harm from physical illness. Plaintiff may disagree with the wisdom of preferring other medical or psychological help rather than taking the life of an unborn child, but the presence of other options where the harm is contingent on the mother's act is one logical reason for the State to make the distinction. *Dobbs*, *supra*. There are certainly others, but one is all that's required under rational basis. *Raidoo*, 75 F.4th at 1121.

### CONCLUSION

For the foregoing reasons, the Complaint should be dismissed.

---

Fourteenth Amendment, there is no comparable tradition of legislative restriction on medical practice until well into the twentieth century." Dkt. 33 at 33 (citing John A. Robertson, Embryo Culture and the Culture of Life: Constitutional Issues in the Embryonic Stem Cell Debate, 2006 U Chi. Legal F. 1, 11 (2006) (emphasis added)).

DATED: August 20, 2024.

                STATE OF IDAHO
                OFFICE OF THE ATTORNEY GENERAL

        By:   /s/ *Aaron M. Green*
                AARON M. GREEN
                Deputy Attorney General

# CERTIFICATE OF SERVICE

I Hereby Certify that on August 20, 2024, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Jamila Johnson
jjohnson@lawyeringproject.org

Tanya Pellegrini
tpellegrini@lawyeringproject.org

Paige Suelzle
psuelzle@lawyeringproject.org

Stephanie Toti
stoti@lawyeringproject.org

Wendy S. Heipt
wheipt@legalvoice.org

*Attorneys for Plaintiff*

    /s/ *Aaron M. Green*
Aaron M. Green
Deputy Attorney General

And I further certify that on such date, the foregoing was served on the following non-CM/ECF registered participants in the manner indicated:

Via first class mail, postage prepaid and addressed as follows:

Shondi Lott
190 S. 4th E St.,
Mountain Home, ID 83647
slott@elmorecounty.org

Justin Oleson
P.O. Box 30
Challis, ID 83226
custerpa@gmail.com

*Pro se Defendants*

    /s/ *Aaron M. Green*
Aaron M. Green

Consolidated Reply in Support of
Defendants' Motions to Dismiss [Dkt. 25, 26] — 17