Kelly O'Neill
koneill@legalvoice.org
Idaho Bar No. 9303
LEGAL VOICE
P.O. Box 50201
Boise, ID 83705
Phone: (208) 649-4942

Wendy S. Heipt*
wheipt@legalvoice.org
LEGAL VOICE
907 Pine Street, No. 500
Seattle, WA 98101
Phone: (206) 954-6798

Jamila Johnson*
jjohnson@lawyeringproject.org
LAWYERING PROJECT
3157 Gentilly Blvd., No. 2231
New Orleans, LA 70122
Phone: (347) 706-4981
Fax: (646) 480-8622

Tanya Pellegrini*
tpellegrini@lawyeringproject.org
LAWYERING PROJECT
584 Castro St., No. 2062
San Francisco, CA 98114
Phone: (646) 480-8973
Fax: (646) 480-8622

Paige Suelzle*
psuelzle@lawyeringproject.org
LAWYERING PROJECT
158 SW 148th Street, No. 1198
Burien, WA 98166
Phone: (347) 515-6073
Fax: (646) 480-8622

Stephanie Toti*
stoti@lawyeringproject.org
LAWYERING PROJECT
41 Schermerhorn St., No. 1056
Brooklyn, NY 11201
Phone: (646) 490-1083
Fax: (646) 480-8622

*Admitted pro hac vice

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO**

| | | |
|---|---|---|
| STACY SEYB, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:24-CV-00244-BLW |
| | ) | |
| v. | ) | |
| | ) | **AMENDED COMPLAINT** |
| MEMBERS OF THE IDAHO BOARD OF | ) | |
| MEDICINE, in their official capacities; ADA | ) | |
| COUNTY PROSECUTING ATTORNEY, in their | ) | |
| official capacity; ADAMS COUNTY PROSECUTING | ) | |
| ATTORNEY, in their official capacity; BANNOCK | ) | |
| COUNTY PROSECUTING ATTORNEY, in their | ) | |
| official capacity; BEAR LAKE COUNTY | ) | |
| PROSECUTING ATTORNEY, in their official | ) | |
| capacity; BENEWAH COUNTY PROSECUTING | ) | |

ATTORNEY, in their official capacity; BINGHAM          )
COUNTY PROSECUTING ATTORNEY, in their          )
official capacity; BLAINE COUNTY PROSECUTING          )
ATTORNEY, in their official capacity; BOISE          )
COUNTY PROSECUTING ATTORNEY, in their          )
official capacity; BONNER COUNTY          )
PROSECUTING ATTORNEY, in their official          )
capacity; BONNEVILLE COUNTY PROSECUTING          )
ATTORNEY, in their official capacity; BOUNDARY          )
COUNTY PROSECUTING ATTORNEY, in their          )
official capacity; BUTTE COUNTY PROSECUTING          )
ATTORNEY, in their official capacity; CAMAS          )
COUNTY PROSECUTING ATTORNEY, in their          )
official capacity; CANYON COUNTY          )
PROSECUTING ATTORNEY, in their official          )
capacity; CARIBOU COUNTY PROSECUTING          )
ATTORNEY, in their official capacity; CASSIA          )
COUNTY PROSECUTING ATTORNEY, in their          )
official capacity; CLARK COUNTY PROSECUTING          )
ATTORNEY, in their official capacity;          )
CLEARWATER COUNTY PROSECUTING          )
ATTORNEY, in their official capacity; CUSTER          )
COUNTY PROSECUTING ATTORNEY, in their          )
official capacity; ELMORE COUNTY          )
PROSECUTING ATTORNEY, in their official          )
capacity; FRANKLIN COUNTY PROSECUTING          )
ATTORNEY, in their official capacity; FREMONT          )
COUNTY PROSECUTING ATTORNEY, in their          )
official capacity; GEM COUNTY PROSECUTING          )
ATTORNEY, in their official capacity; GOODING          )
COUNTY PROSECUTING ATTORNEY, in their          )
official capacity; IDAHO COUNTY PROSECUTING          )
ATTORNEY, in their official capacity; JEFFERSON          )
COUNTY PROSECUTING ATTORNEY, in their          )
official capacity; JEROME COUNTY PROSECUTING          )
ATTORNEY, in their official capacity; KOOTENAI          )
COUNTY PROSECUTING ATTORNEY, in their          )
official capacity; LATAH COUNTY PROSECUTING          )
ATTORNEY, in their official capacity; LEMHI          )
COUNTY PROSECUTING ATTORNEY, in their          )
official capacity; LEWIS COUNTY PROSECUTING          )
ATTORNEY, in their official capacity; LINCOLN          )
COUNTY PROSECUTING ATTORNEY, in their          )
official capacity; MADISON COUNTY          )
PROSECUTING ATTORNEY, in their official          )
capacity; MINIDOKA COUNTY PROSECUTING          )

ATTORNEY, in their official capacity; NEZ PERCE        )
COUNTY PROSECUTING ATTORNEY, in their              )
official capacity; ONEIDA COUNTY PROSECUTING       )
ATTORNEY, in their official capacity; OWYHEE        )
COUNTY PROSECUTING ATTORNEY, in their              )
official capacity; PAYETTE COUNTY                   )
PROSECUTING ATTORNEY, in their official            )
capacity; POWER COUNTY PROSECUTING                 )
ATTORNEY, in their official capacity; SHOSHONE      )
COUNTY PROSECUTING ATTORNEY, in their              )
official capacity; TETON COUNTY PROSECUTING        )
ATTORNEY, in their official capacity; TWIN FALLS    )
COUNTY PROSECUTING ATTORNEY, in their              )
official capacity; VALLEY COUNTY PROSECUTING       )
ATTORNEY, in their official capacity; and           )
WASHINGTON COUNTY PROSECUTING                      )
ATTORNEY, in their official capacity,              )
                                                   )
                              Defendants.           )

Plaintiff, by and through his undersigned attorneys, brings this Complaint against the

above-named Defendants and their employees, agents, and successors in office, and in support

thereof alleges the following:

## PRELIMINARY STATEMENT

1.    For anyone who is pregnant and does not want to be, abortion is essential

healthcare.

2.    Everyone deserves access to abortion care without judgment or stigma—

regardless of their reasons for wanting an abortion—because the ability to make decisions about

pregnancy and parenthood is vital to a person's dignity, equality, self-determination, and

religious liberty.

3.    Idaho has enacted two abortion bans that are currently in effect:  a ban on abortion

throughout pregnancy, Idaho Code § 18-622 ("Ban Throughout Pregnancy"), and a ban on

abortion beginning at approximately six weeks of pregnancy, Idaho Code §§ 18-8801 to 18-8808

("Six-Week Ban"), (collectively, the "Abortion Bans").

4.     Both of Idaho's Abortion Bans are unjust and profoundly harmful in all of their applications.

5.     In *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215, 225 (2022), the Supreme Court overturned nearly fifty years of settled precedent and held that the Due Process Clause of the Fourteenth Amendment does not confer "a broad right to obtain [an abortion]."

6.     Plaintiff believes that *Dobbs* was wrongly decided but accepts it as controlling authority for purposes of this lawsuit.  Plaintiff seeks relief from the Abortion Bans that is consistent with the holding in *Dobbs*.

7.     In particular, Plaintiff seeks declaratory and injunctive relief from application of the Abortion Bans to abortion care that is medically indicated.  This includes abortion care in circumstances where:

    a.  pregnancy-related complications jeopardize the pregnant person's health;

    b.  continuing the pregnancy would exacerbate an underlying health condition or interfere with the pregnant person's ability to obtain standard treatment for that condition;

    c.  continuing the pregnancy would put the pregnant person at risk of death from self-harm;

    d.  the embryo or fetus is diagnosed with a fatal or grave condition or miscarriage is inevitable; or

    e.  a multifetal pregnancy reduction would increase the likelihood of survival of the remaining fetuses.

8.      Consistent with *Dobbs*, the Due Process Clause of the Fourteenth Amendment protects the right to seek treatment for serious medical needs without undue governmental interference because this right is deeply rooted in the nation's history and tradition.  It likewise protects people against arbitrary and irrational state action.  Further, the Equal Protection Clause prohibits states from discriminating against people at risk of death from self-harm, as the Ban Throughout Pregnancy does.

9.      The relief that Plaintiff seeks will enable pregnant Idaho residents with medical indications to obtain abortion care in their home state without incurring the financial, logistical, and emotional burdens of interstate travel or being exposed to further health risks because of such travel.  The relief that Plaintiff seeks will also reduce the chilling effect that the Abortion Bans are having on the provision of a wide range of pregnancy-related healthcare in Idaho and help to stop the exodus of obstetric clinicians from the state.

10.     Admittedly, this relief will address only a fraction of the harm that Idaho's Abortion Bans are causing.  Although alleviating it is a meaningful step toward achieving justice, justice for all Idaho residents will require repeal of the Abortion Bans through legislative action or direct democracy, or reversal of *Dobbs* by the Supreme Court.

## JURISDICTION, VENUE, AND RIGHT OF ACTION

11.     The Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 because this case is a civil action "arising under the Constitution, laws, or treaties of the United States," and 28 U.S.C. § 1343(a)(3) because this case seeks to redress the deprivation of federal constitutional rights under color of state law.

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because certain Defendants, who are government officers sued in their official capacities, operate and perform their official duties in this district.  Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2)

because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this district.

13.    42 U.S.C. § 1983 grants Plaintiff a right of action to redress the deprivation, under color of state law, of rights secured by the U.S. Constitution.

14.    Declaratory relief is authorized by 28 U.S.C. §§ 2201-2202 and Federal Rule of Civil Procedure 57.

**PARTIES**

15.    Stacy Seyb, M.D., is a Plaintiff in this action.  Dr. Seyb is a physician licensed to practice medicine in Idaho.  He is board-certified in maternal-fetal medicine, which is a sub-specialty of obstetrics and gynecology that focuses on providing care to people with high-risk or complicated pregnancies.  From 2019 to 2023, Dr. Seyb served on Idaho's Maternal Mortality Review Committee ("MMRC").  Since April 2000, Dr. Seyb has served as an Attending Physician in maternal-fetal medicine at St. Luke's, a hospital in Boise.  The Abortion Bans prevent him from providing appropriate care to all of his patients.  Dr. Seyb sues on behalf of himself and his pregnant patients.

16.    Over the course of his career, Dr. Seyb has delivered approximately 2,000 to 3,000 babies and provided approximately 500 abortions.  The vast majority of those abortions have been for patients with medical indications.  In recent years, before Idaho's abortion bans took effect, Dr. Seyb provided two to three abortions per month, on average.  All of those abortions were for patients with serious medical conditions.  In addition, Dr. Seyb assisted other doctors with medically indicated abortion procedures six to eight times per year.  Although most of his abortion patients have resided in southwest Idaho, he has occasionally provided abortion care to patients who traveled to St. Luke's from other parts of the state, including northern Idaho and eastern Idaho.  Since Idaho's abortion bans have been in effect, Dr. Seyb has had to refer

6

approximately six patients per month with serious medical conditions to out-of-state abortion providers.  Dr. Seyb no longer provides abortions in Idaho because he fears criminal prosecution or professional discipline for violating the abortion bans.  But for Idaho's abortion bans, he would continue to provide abortion care in Idaho to patients with serious medical conditions rather than refer them to out-of-state abortion providers.

       17.     The Members of the Idaho Board of Medicine ("Board") are Defendants in this action.  The Board is required to suspend or revoke the license of any physician who violates the Ban Throughout Pregnancy or the Six-Week Ban.  *See* Idaho Code §§ 18-622(1), 18-8805(3), 54-1806, 54-1806A.  The Board has eleven members.  Plaintiff sues each member in the member's official capacity.

       18.     The Ada County Prosecuting Attorney is a Defendant in this action.

       19.     The Adams County Prosecuting Attorney is a Defendant in this action.

       20.     The Bannock County Prosecuting Attorney is a Defendant in this action.

       21.     The Bear Lake County Prosecuting Attorney is a Defendant in this action.

       22.     The Benewah County Prosecuting Attorney is a Defendant in this action.

       23.     The Bingham County Prosecuting Attorney is a Defendant in this action.

       24.     The Blaine County Prosecuting Attorney is a Defendant in this action.

       25.     The Boise County Prosecuting Attorney is a Defendant in this action.

       26.     The Bonner County Prosecuting Attorney is a Defendant in this action.

       27.     The Bonneville County Prosecuting Attorney is a Defendant in this action.

       28.     The Boundary County Prosecuting Attorney is a Defendant in this action.

       29.     The Butte County Prosecuting Attorney is a Defendant in this action.

       30.     The Camas County Prosecuting Attorney is a Defendant in this action.

31.     The Canyon County Prosecuting Attorney is a Defendant in this action.

32.     The Caribou County Prosecuting Attorney is a Defendant in this action.

33.     The Cassia County Prosecuting Attorney is a Defendant in this action.

34.     The Clark County Prosecuting Attorney is a Defendant in this action.

35.     The Clearwater County Prosecuting Attorney is a Defendant in this action.

36.     The Custer County Prosecuting Attorney is a Defendant in this action.

37.     The Elmore County Prosecuting Attorney is a Defendant in this action.

38.     The Franklin County Prosecuting Attorney is a Defendant in this action.

39.     The Fremont County Prosecuting Attorney is a Defendant in this action.

40.     The Gem County Prosecuting Attorney is a Defendant in this action.

41.     The Gooding County Prosecuting Attorney is a Defendant in this action.

42.     The Idaho County Prosecuting Attorney is a Defendant in this action.

43.     The Jefferson County Prosecuting Attorney is a Defendant in this action.

44.     The Jerome County Prosecuting Attorney is a Defendant in this action.

45.     The Kootenai County Prosecuting Attorney is a Defendant in this action.

46.     The Latah County Prosecuting Attorney is a Defendant in this action.

47.     The Lemhi County Prosecuting Attorney is a Defendant in this action.

48.     The Lewis County Prosecuting Attorney is a Defendant in this action.

49.     The Lincoln County Prosecuting Attorney is a Defendant in this action.

50.     The Madison County Prosecuting Attorney is a Defendant in this action.

51.     The Minidoka County Prosecuting Attorney is a Defendant in this action.

52.     The Nez Perce County Prosecuting Attorney is a Defendant in this action.

53.     The Oneida County Prosecuting Attorney is a Defendant in this action.

54.     The Owyhee County Prosecuting Attorney is a Defendant in this action.

55.     The Payette County Prosecuting Attorney is a Defendant in this action.

56.     The Power County Prosecuting Attorney is a Defendant in this action.

57.     The Shoshone County Prosecuting Attorney is a Defendant in this action.

58.     The Teton County Prosecuting Attorney is a Defendant in this action.

59.     The Twin Falls County Prosecuting Attorney is a Defendant in this action.

60.     The Valley County Prosecuting Attorney is a Defendant in this action.

61.     The Washington County Prosecuting Attorney is a Defendant in this action.

62.     The above-named County Prosecuting Attorneys have primary responsibility for "enforcing all the penal provisions of any and all statutes of [Idaho]," Idaho Code § 31-2227(1), including the Abortion Bans, *id.* §§ 18-622, 18-8805.  Plaintiff sues each County Prosecuting Attorney in the attorney's official capacity.

## THE ABORTION BANS

### I.    The Ban Throughout Pregnancy

63.     In its current form, the Ban Throughout Pregnancy criminalizes all abortion care except in *some*, but not all, cases where abortion is necessary to save a pregnant person's life and *some*, but not all, cases where abortion is sought by a survivor of rape or incest.  *See* Idaho Code § 18-622.

64.     The Ban Throughout Pregnancy was enacted in 2020 as a trigger ban.  *See Planned Parenthood Great Nw. v. State*, 522 P.3d 1132, 1152 (Idaho 2023).  It took effect on August 25, 2022, thirty days after the Supreme Court issued judgment in *Dobbs*, subject to a preliminary injunction by this Court against its enforcement "to the extent that [the] statute conflicts with" care mandated by the Emergency Medical Treatment and Labor Act ("EMTALA"), 42 U.S.C. § 1395dd(a).  *United States v. Idaho*, 623 F. Supp. 3d 1096, 1102 (D.

Idaho 2022).  The U.S. Supreme Court subsequently stayed that injunction.  *Moyle v. United States*, 144 S. Ct. 540 (2024) (mem.).[1]

65.    Last year, the Idaho Legislature amended the Ban Throughout Pregnancy and the statutory definition of abortion applicable to it.  2023 Idaho Sess. Laws 906, 906-09 (H.B. No. 374).  Those amendments took effect on July 1, 2023.  *Id.* at 909.

66.    As amended, the definition of abortion applicable to the Ban Throughout Pregnancy provides that:

> "Abortion" means the use of any means to intentionally terminate the clinically diagnosable pregnancy of a woman with knowledge that the termination by those means will, with reasonable likelihood, cause the death of the unborn child except that, for purposes of this chapter, abortion shall not mean:  (a) The use of an intrauterine device or birth control pill to inhibit or prevent ovulations, fertilization, or the implantation of a fertilized ovum within the uterus; (b) The removal of a dead unborn child; (c) The removal of an ectopic or molar pregnancy; or (d) The treatment of a woman who is no longer pregnant.

Idaho Code § 18-604(1).

67.    As amended, the operative language in the Ban Throughout Pregnancy states that: "[E]very person who performs or attempts to perform an abortion as defined in this chapter commits the crime of criminal abortion."  *Id.* § 18-622(1).

68.    The statute contains a narrow life exception, which exempts from liability a physician who "determined, in his good faith medical judgment and based on the facts known to the physician at the time, that the abortion was necessary to prevent the death of the pregnant woman" provided that the physician "performed or attempted to perform the abortion in the manner that, in his good faith medical judgment and based on the facts known to the physician at

---

[1] The Supreme Court treated the stay applications as petitions for a writ of certiorari before judgment, and it granted the petitions.  *Moyle v. United States*, 144 S. Ct. 540 (2024) (mem.).  It heard oral argument on April 24, 2024.

the time, provided the best opportunity for the unborn child to survive, unless, in his good faith judgment, termination of the pregnancy would have posed a greater risk of the death of the pregnant woman" from a cause other than self-harm. *Id.* § 18-622(2)(a). This exception does not apply when the pregnant person faces a risk of death from self-harm. *Id.* § 18-622(2)(a)(i).

69.    The statute also contains an exception for survivors of rape or incest, but only if the survivor (or their parent or guardian if the survivor is a minor) reported the crime to a government agency and can furnish documentation of the report to the abortion provider. *See id.* § 18-622(2)(b). Additionally, the statute provides that criminal abortion does not encompass medical treatment that results in the accidental death of an embryo or fetus and does not "subject a pregnant woman on whom any abortion is performed or attempted to any criminal conviction and penalty." *Id.* § 18-622(4)-(5).

70.    Criminal abortion constitutes a felony punishable by two to five years in prison. *Id.* § 18-622(1). Further, the license of any licensed healthcare provider who performs or attempts a criminal abortion or assists with such action "shall be suspended by the appropriate licensing board for a minimum of six (6) months upon a first offense and shall be permanently revoked upon a subsequent offense." *Id.* § 18-622(1).

## II.    The Six-Week Ban

71.    In its current form, the Six-Week Ban prohibits abortion care when embryonic or fetal cardiac activity is detectable, subject to narrow exceptions for certain medical emergencies and survivors of rape or incest. *See* Idaho Code §§ 18-8801 to 18-8808. Cardiac activity typically becomes detectable at around six weeks of pregnancy, as measured from the first day of a person's last menstrual period ("LMP").

72.    For purposes of the Six-Week Ban, "'abortion' means the use of any means to intentionally terminate the clinically diagnosable pregnancy of a woman with knowledge that the

termination by those means will, with reasonable likelihood, cause the death of the preborn child," and "does not mean the use of an intrauterine device or birth control pill to inhibit or prevent ovulations, fertilization, or the implantation of a fertilized ovum within the uterus." *Id.* § 18-8801(1).

73.    The operative language in the Six-Week Ban provides that:  "A person may not perform an abortion on a pregnant woman when a fetal heartbeat has been detected . . . ." *Id.* § 18-8804(1).

74.    The statute contains an exception for cases of "medical emergency," *id.*, defined as "a condition that, in reasonable medical judgment, so complicates the medical condition of a pregnant woman as to necessitate the immediate abortion of her pregnancy to avert her death or for which a delay will create serious risk of substantial and irreversible impairment of a major bodily function," *id.* § 18-8801(5).

75.    The statute also contains an exception for survivors of rape or incest, but only if the survivor (or their parent or guardian if the survivor is a minor) reported the crime to a government agency and can furnish documentation of the report to the abortion provider.  *See id.* § 18-8804(1).

76.    The Six-Week Ban contains both a criminal enforcement provision, *id.* § 18-8805, and a private right of action for specified individuals, *id.* § 18-8807(1).

77.    The statute was enacted in 2021 as a trigger ban.  *See* 2021 Idaho Sess. Laws 867, 867-69 (H.B. No. 366).  In 2022, the Idaho Legislature amended the statute to, among other things, move the trigger language to the criminal enforcement provision and give the private right of action immediate effect.  *See* 2022 Idaho Sess. Laws 532, 534-35 (S.B. No. 1309); *Planned Parenthood Great Nw.*, 522 P.3d at 1153.  The criminal enforcement provision was

triggered by the Eleventh Circuit's decision in *SisterSong Women of Color Reproductive Justice Collective v. Governor of Georgia*, 40 F.4th 1320 (11th Cir. 2022). It took effect thirty days after the judgment issued in that case. *See* Idaho Code § 18-8805(1); *Planned Parenthood Great Nw.*, 522 P.3d at 1154.

78.     Under the criminal enforcement provision, violation of the Six-Week Ban constitutes a felony punishable by two to five years in prison. Idaho Code § 18-8805(2). The Board may also suspend or revoke a healthcare provider's professional license. *Id.* § 18-8805(3).

79.     The Six-Week Ban's criminal enforcement provision states that: "Nothing in this section shall be construed to conflict with the effectiveness of [the Ban Throughout Pregnancy] . . . . In the event both this section and [the Ban Throughout Pregnancy] are enforceable, [the Ban Throughout Pregnancy] shall supersede this section." *Id.* § 18-8805(4). In *Planned Parenthood Great Northwest*, the Idaho Supreme Court held that, notwithstanding this provision and the fact that the Ban Throughout Pregnancy had been triggered by *Dobbs*, a challenge to the Six-Week Ban on state constitutional grounds was not moot because this Court had preliminarily enjoined enforcement of the Ban Throughout Pregnancy in certain circumstances. 522 P.3d at 1161.

80.     Here, Plaintiff seeks an injunction against enforcement of the Ban Throughout Pregnancy in certain circumstances. Therefore, Plaintiff includes a challenge to the Six-Week Ban to ensure that he can fully vindicate the right of Idaho residents to obtain medically indicated abortion care.

## MEDICAL INDICATIONS FOR ABORTION CARE

81.     In medicine, an "indication" is a symptom, condition, or factor that makes a particular course of action advisable.

82.     Medical indications for abortion may be present in many circumstances.

83.     For example, abortion is medically indicated when pregnancy-related complications jeopardize the pregnant person's physical, mental, or behavioral health.

84.     Such pregnancy-related complications include preterm premature rupture of membranes ("PPROM"), which occurs when a pregnant person's water breaks—meaning that there is a rupture in their gestational sac causing amniotic fluid to leak out—before the onset of labor.  In some cases, continued pregnancy will lead to the development of a serious infection, which can result in the death of both the pregnant person and the fetus.

85.     Pregnancy-related complications also include placental abnormalities such as placenta previa (when the placenta covers the cervix) and placental abruption (when the placenta prematurely detaches from the uterus).  These conditions may cause hemorrhaging that can lead to organ damage, organ failure, or death.

86.     Similarly, hypertensive disorders in pregnancy ("HDPs") are common pregnancy-related complications that entail persistently high blood pressure and can lead to organ damage, organ failure, or death.  Preeclampsia is an HDP that typically occurs after twenty weeks of pregnancy, although some cases have been reported at seventeen to nineteen weeks of pregnancy.  Pre-eclampsia can lead to stroke, kidney failure, liver failure, seizures, and death.

87.     Abortion is medically indicated when continuing the pregnancy would exacerbate an underlying physical, mental, or behavioral health condition or interfere with the pregnant person's ability to obtain standard treatment for that condition.

88.     Pregnancy exacerbates many chronic medical conditions, including but not limited to diabetes, asthma, hypertension, autoimmune disorders, cardiac diseases, anxiety, depression, and substance use disorder.

89.    For example, pregnancy makes it much harder for people with type 1 and type 2 diabetes to control their blood sugar.  People with diabetes who have poorly controlled blood sugar are at high risk of heart disease, chronic kidney disease, nerve damage, blindness, amputations, and other serious conditions.  Diabetes also increases the risk that a pregnancy will result in stillbirth or birth defects.

90.    Moreover, pregnancy can limit or complicate treatment options for people with certain serious health conditions.

91.    For example, pregnancy is a contraindication for some routine cancer treatments, including radiation and chemotherapy, because those treatments carry a high risk of fetal death or serious birth defects.  Alternative treatments are generally far less effective, threatening the pregnant person's life.

92.    Similarly, some medications used to treat serious illnesses are harmful to embryos and fetuses.  When abortion is not an option, a person taking one of those medications who has an unplanned pregnancy is forced to choose between exposing the fetus to the risk of severe birth defects or abruptly discontinuing their medication with potentially devastating effects on their health.

93.    Pregnancy can exacerbate the symptoms of substance use disorder, resulting in higher risk of overdose.

94.    In addition, pregnant people are generally ineligible for organ transplant surgeries, and becoming pregnant after transplant surgery increases the risk of poor outcomes.

95.    Abortion is medically indicated when continuing the pregnancy would put the pregnant person at risk of death from self-harm.

96.     Suicide and overdose are among the leading causes of death for pregnant and post-partum people in the United States.  As explained in more detail below, from 2018 to 2021, the period studied by Idaho's MMRC, the most common underlying cause of maternal death in Idaho was mental health conditions, encompassing deaths related to suicide, substance use disorder, and other types of self-harm.  *See infra* at ¶¶ 112-16.

97.     Abortion is medically indicated when the embryo or fetus is diagnosed with a fatal or grave condition or miscarriage is inevitable.

98.     Fatal fetal conditions include, but are not limited to, anencephaly (the absence of a major portion of the brain, skull, and scalp), triploidy (an extra set of chromosomes), trisomy 13 and 18 (the presence of an extra chromosome), and Potter Syndrome (where the fetus does not properly develop kidneys). Often pregnancies with fatal fetal conditions result in miscarriage, but when they do not, in the overwhelming majority of cases, the fetus will either be stillborn or survive only a few hours or days after birth.  Further, carrying a fetus with a fatal condition poses significant risks of physical and psychological harm to the pregnant person, and those risks increase as the pregnancy progresses.

99.     Grave fetal conditions have low long-term survival rates and are immediately fatal absent major medical interventions that may not be accessible or affordable for everyone. Examples include severe cardiac defects.

100.     Inevitable miscarriage describes a situation in which a miscarriage cannot be avoided because the pregnant person is cramping, bleeding, and has a dilated cervix.  Embryonic or fetal cardiac activity may continue to be present during an inevitable miscarriage, but if the pregnancy is not promptly terminated, the pregnant person can develop a serious and potentially life-threatening hemorrhage or infection.

101.    Abortion is medically indicated when a multifetal pregnancy reduction would reduce a pregnant person's risk of death or serious injury and/or increase the likelihood of survival of the remaining fetuses.

102.    In recent years, fertility treatments have contributed to a significant increase in multifetal pregnancies, such as pregnancies with quadruplets or triplets.

103.    Multifetal pregnancy reduction is a first-trimester or early second-trimester procedure for reducing the total number of pre-viable fetuses in a multifetal pregnancy by one or more.

104.    Multifetal pregnancies increase maternal and perinatal morbidity and mortality—*i.e.*, they increase the risk that pregnant and post-partum people will experience serious injury or death.  Pregnant people with multifetal pregnancies are at increased risk of hypertension, preeclampsia, gestational diabetes, and post-partum hemorrhage.  Reduction to a lower-order pregnancy reduces the risk of medical complications associated with maintaining a higher-order multiple pregnancy.[2]

105.    Compared with singleton pregnancies, multifetal pregnancies are associated with an approximately fivefold increased risk of stillbirth and a sevenfold increased risk of neonatal death.  Reducing a multifetal pregnancy by one or more pre-viability fetuses substantially

---

[2] Am. Coll. of Obstetricians & Gynecologists ("ACOG"), *Multifetal Pregnancy Reduction:  Committee Opinion No. 719*, 130 Obstetrics & Gynecology e158, e159 (2017), https://www.acog.org/-/media/project/acog/ acogorg/clinical/files/committee-opinion/articles/2017/09/multifetal-pregnancy-reduction.pdf.  ACOG reaffirmed this Committee Opinion in 2020, and the Society for Maternal-Fetal Medicine endorses it.  ACOG, *Multifetal Pregnancy Reduction* (last visited May 13, 2024), https://www.acog.org/clinical/clinical-guidance/committee-opinion/articles/2017/09/multifetal-pregnancy-reduction.

decreases the likelihood of spontaneous pregnancy loss and thereby substantially increases the likelihood of the survival of the remaining fetuses.[3]

106.    There is only a narrow window of time during which multifetal pregnancy reduction can be performed.[4]

107.    The American College of Obstetricians and Gynecologists ("ACOG"), the leading professional association of obstetrician-gynecologists in the United States, directs that: "Obstetrician-gynecologists should respect patients' autonomy regarding whether to continue or reduce a multifetal pregnancy.  Only the patient can weigh the relative importance of the medical, ethical, religious, and socioeconomic factors and determine the best course of action for her unique situation."[5]

## HARMS CAUSED BY APPLICATION OF THE ABORTION BANS TO MEDICALLY INDICATED ABORTION CARE

108.    Preventing physicians like Dr. Seyb from providing abortion care in circumstances where medical indications are present can result in the serious injury or death of their pregnant patients.

109.    Maternal morbidity—the occurrence of negative health conditions caused or aggravated by pregnancy or childbirth—is a significant problem in the U.S. and has been increasing in recent years.[6]  It can have severe and lasting impacts on a person's health and quality of life.

---

[3] ACOG, *supra* note 2, at e159.

[4] *Id.* at e160.

[5] *Id.* at e161.

[6] Office of Research on Women's Health, *What Are Maternal Morbidity and Mortality*, National Institutes of Health (last visited May 13, 2024), https://orwh.od.nih.gov/mmm-portal/what-mmm.

110. The Abortion Bans exacerbate the problem of maternal morbidity by limiting the treatment options available to pregnant people, and they increase the risk that maternal morbidity will lead to maternal death.

111. The U.S. has one of the highest rates of maternal mortality in the developed world.[7] Approximately 700 people die in the U.S. each year because of pregnancy or delivery complications.[8] That figure does not include the substantial number of pregnant and post-partum people who die from suicide or drug overdose.[9]

112. There are considerable racial and ethnic disparities in maternal mortality. In the U.S., Black and Indigenous people are two to three times more likely to die of pregnancy-related causes than White people.[10]

113. In 2019, the Idaho Legislature established the MMRC to identify, review, and analyze maternal deaths in Idaho. 2019 Idaho Sess. Laws 336, 336-38 (H.B. No. 109). The Idaho Legislature allowed the law authorizing the MMRC to sunset in 2023.[11] Staff members at the Idaho Department of Health and Welfare prepared annual reports based on the MMRC's findings for the years 2018 to 2021.

---

[7] *Id.*

[8] *Id.*

[9] Jacquelyn Campbell et al., *Pregnancy-Associated Deaths from Homicide, Suicide, and Drug Overdose: Review of Research and the Intersection with Intimate Partner Violence*, 30 J. of Women's Health 236, 236–44 (2021), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8020563/pdf/jwh.2020.8875.pdf.

[10] Nat'l Ctr. for Chronic Disease Prevention & Health Promotion, Div. of Reprod. Health, *Pregnancy-Related Deaths in the United States*, Centers for Disease Control and Prevention (Nov. 16, 2022), https://www.cdc.gov/hearher/pregnancy-related-deaths/index.html.

[11] Effective July 1, 2024, the Idaho Board of Medicine will begin collecting information on instances of maternal mortality and reporting annually to the legislature. Act of Mar. 18, 2024, Idaho Laws ch. 67, https://legislature.idaho.gov/sessioninfo/2024/legislation/H0399/.

114.    In 2021, seventeen people in Idaho died while pregnant or within one year of pregnancy.[12]  The most common underlying cause of death was mental health conditions, including deaths related to suicide, substance use disorder, overdose/poisoning, and unintentional injuries determined by the MMRC to be related to a mental health condition.[13]  This was followed by infection and amniotic fluid embolism.[14]

115.    In 2020, eleven people in Idaho died while pregnant or within one year of pregnancy.[15]  The most common underlying cause of death was mental health conditions, followed by cardiovascular conditions and infection.[16]

116.    In 2019, five people in Idaho died while pregnant or within one year of pregnancy.[17]  Substance use disorder was a contributing factor in three of the five deaths.[18] Mental health disorder was a contributing factor in two of the deaths and was a probable factor in another two deaths.[19]

---

[12] Jennifer Liposchak et al., *2021 Maternal Deaths in Idaho* 6 (2023), https://publicdocuments.dhw.idaho.gov/WebLink/DocView.aspx?id=26443&dbid=0&repo=PUBLIC-DOCUMENTS.

[13] *Id.*

[14] *Id.*

[15] Jennifer Liposchak et al., *2020 Maternal Deaths in Idaho* 5 (2022), https://publicdocuments.dhw.idaho.gov/WebLink/DocView.aspx?id=24216&dbid=0&repo=PUBLIC-DOCUMENTS.

[16] *Id.*

[17] Xenya Poole et al., *2019 Maternal Deaths in Idaho* 4 (2021), https://publicdocuments.dhw.idaho.gov/WebLink/DocView.aspx?id=20799&dbid=0&repo=PUBLIC-DOCUMENTS.

[18] *Id.*

[19] *Id.*

117.    In 2018, ten people in Idaho died while pregnant or within one year of pregnancy.[20]  The most common underlying cause of death was mental health conditions, followed by traumatic injuries.[21]

118.    The Abortion Bans increase the likelihood that pregnant people in Idaho will die from preventable causes.

119.    The Abortion Bans are having a chilling effect on healthcare providers' willingness to provide reproductive healthcare that may be mistaken for abortion care by Defendants, including treatment for miscarriage.[22]

120.    The Abortion Bans have caused maternal-fetal medicine specialists and other obstetric clinicians to flee the state.  Before the Abortion Bans went into effect, there were nine maternal-fetal medicine specialists practicing in Idaho.  Since then, five of those nine have left their jobs.[23]  One report found that more than fifty Idaho obstetrician-gynecologists have stopped practicing in the state since August 2022.[24]  Half of Idaho's forty-four counties do not have practicing obstetrician-gynecologists, resulting in vast healthcare deserts across the state and requiring pregnant people to travel for miles to see a provider.  Additionally, three Idaho

---

[20] Xenya Poole et al., *2018 Maternal Deaths in Idaho* 12 (2021), https://publicdocuments.dhw.idaho.gov/WebLink/DocView.aspx?id=16014&dbid=0&repo=PUBLIC-DOCUMENTS.

[21] *Id.* at 17.

[22] *See, e.g.*, Nicole Blanchard, *Boise pharmacist refused to fill prescription for miscarriage meds, citing abortion laws*, IDAHO STATESMAN (Feb. 5, 2024), https://www.idahostatesman.com/news/local/community/boise/article284961042.html.

[23] Abigail Abrams, *'It's demoralizing': Idaho abortion ban takes toll on medical providers*, The Guardian (July 16, 2023), https://www.theguardian.com/us-news/2023/jul/16/idaho-abortion-ban-ob-gyn-doctors.

[24] *Dozens of Idaho obstetricians have stopped practicing there since abortions were banned, study says*, Associated Press (Feb. 21, 2024), https://apnews.com/article/idaho-abortion-ban-doctors-leaving-f34e901599f5eabed56ae96599c0e5c2.

hospitals have ceased providing labor and delivery services in the wake of the Abortion Bans.[25] Consequently, the Abortion Bans have destabilized the entire reproductive healthcare system in the state, jeopardizing the health and welfare of all Idaho residents who need pregnancy-related healthcare.

121.    The Abortion Bans discourage Idaho hospitals from investing in reproductive healthcare services and expanding the scope of services they offer.

122.    The Abortion Bans are causing many Idaho patients to travel out of state— sometimes on an emergency basis by helicopter—to obtain medically indicated abortion care. This delays patients' access to care and increases the medical risks they face.

123.    Some pregnant Idaho residents with serious medical conditions have traveled to hospitals in neighboring states such as Utah for expectant management.  These patients have spent weeks—and in some cases, months—in hospitals hundreds of miles from their homes and families so that, if their condition were to deteriorate, they would be able to obtain abortion care promptly without unnecessary risk to their health and lives.

**CLAIMS**

**Count 1**
**(Substantive Due Process)**

124.    The allegations of paragraphs 1 through 122 are incorporated as though fully set forth herein.

125.    As applied to abortion care in circumstances where pregnancy-related complications jeopardize the pregnant person's health; continuing the pregnancy would

---

[25] Angela Palermo, *Caldwell hospital will close labor, delivery units. What it's saying—and not saying*, Idaho Statesman (Mar. 25, 2024), https://www.idahostatesman.com/living/health-fitness/article28580 5121.html.

exacerbate an underlying health condition or interfere with the pregnant person's ability to obtain standard treatment for that condition; continuing the pregnancy would put the pregnant person at risk of death from self-harm; the embryo or fetus is diagnosed with a fatal or grave condition or miscarriage is inevitable; or a multifetal pregnancy reduction would increase the likelihood of survival of the remaining fetuses, the Ban Throughout Pregnancy infringes on a fundamental right without sufficient justification in violation of the Due Process Clause of the Fourteenth Amendment.

126.    As applied to abortion care in circumstances where pregnancy-related complications jeopardize the pregnant person's health; continuing the pregnancy would exacerbate an underlying health condition or interfere with the pregnant person's ability to obtain standard treatment for that condition; continuing the pregnancy would put the pregnant person at risk of death from self-harm; the embryo or fetus is diagnosed with a fatal or grave condition or miscarriage is inevitable; or a multifetal pregnancy reduction would increase the likelihood of survival of the remaining fetuses, the Ban Throughout Pregnancy is arbitrary and irrational in violation of the Due Process Clause of the Fourteenth Amendment.

127.    As applied to abortion care in circumstances where pregnancy-related complications jeopardize the pregnant person's health; continuing the pregnancy would exacerbate an underlying health condition or interfere with the pregnant person's ability to obtain standard treatment for that condition; continuing the pregnancy would put the pregnant person at risk of death from self-harm; the embryo or fetus is diagnosed with a fatal or grave condition or miscarriage is inevitable; or a multifetal pregnancy reduction would increase the likelihood of survival of the remaining fetuses, the Six-Week Ban infringes on a fundamental right without sufficient justification in violation of the Due Process Clause of the Fourteenth Amendment.

128.    As applied to abortion care in circumstances where pregnancy-related complications jeopardize the pregnant person's health; continuing the pregnancy would exacerbate an underlying health condition or interfere with the pregnant person's ability to obtain standard treatment for that condition; continuing the pregnancy would put the pregnant person at risk of death from self-harm; the embryo or fetus is diagnosed with a fatal or grave condition or miscarriage is inevitable; or a multifetal pregnancy reduction would increase the likelihood of survival of the remaining fetuses, the Six-Week Ban is arbitrary and irrational in violation of the Due Process Clause of the Fourteenth Amendment.

### Count 2
**(Equal Protection)**

129.    The allegations of paragraphs 1 through 122 are incorporated as though fully set forth herein.

130.    By treating pregnant people at risk of death from self-harm differently than pregnant people at risk of death from other causes, the Ban Throughout Pregnancy burdens a fundamental right without sufficient justification in violation of the Equal Protection Clause of the Fourteenth Amendment.

131.    By treating pregnant people at risk of death from self-harm differently than pregnant people at risk of death from other causes, the Ban Throughout Pregnancy is arbitrary and irrational in violation of the Equal Protection Clause of the Fourteenth Amendment.

132.    The Ban Throughout Pregnancy's differential treatment of pregnant people at risk of death from self-harm is motivated by animus against people with mental illness.

133.    The Ban Throughout Pregnancy's differential treatment of pregnant people at risk of death from self-harm is motivated by animus against people with behavioral health disorders.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

a.  Declare the Ban Throughout Pregnancy unconstitutional and unenforceable as applied to abortion care in circumstances where:

     i.  pregnancy-related complications jeopardize the pregnant person's health;

     ii.  continuing the pregnancy would exacerbate an underlying health condition or interfere with the pregnant person's ability to obtain standard treatment for that condition;

     iii.  continuing the pregnancy would put the pregnant person at risk of death from self-harm;

     iv.  the embryo or fetus is diagnosed with a fatal or grave condition or miscarriage is inevitable; or

     v.  a multifetal pregnancy reduction would increase the likelihood of survival of the remaining fetuses.

b.  Permanently enjoin enforcement of the Ban Throughout Pregnancy as applied to abortion care in circumstances where:

     i.  pregnancy-related complications jeopardize the pregnant person's health;

     ii.  continuing the pregnancy would exacerbate an underlying health condition or interfere with the pregnant person's ability to obtain standard treatment for that condition;

     iii.  continuing the pregnancy would put the pregnant person at risk of death from self-harm;

     iv.  the embryo or fetus is diagnosed with a fatal or grave condition or miscarriage is inevitable; or

     v.    a multifetal pregnancy reduction would increase the likelihood of survival of the remaining fetuses.

c.  Declare the Six-Week Ban unconstitutional and unenforceable as applied to abortion care in circumstances where:

     i.    pregnancy-related complications jeopardize the pregnant person's health;

     ii.   continuing the pregnancy would exacerbate an underlying health condition or interfere with the pregnant person's ability to obtain standard treatment for that condition;

     iii.  continuing the pregnancy would put the pregnant person at risk of death from self-harm;

     iv.   the embryo or fetus is diagnosed with a fatal or grave condition or miscarriage is inevitable; or

     v.    a multifetal pregnancy reduction would increase the likelihood of survival of the remaining fetuses.

d.  Permanently enjoin enforcement of the Six-Week Ban as applied to abortion care in circumstances where:

     i.    pregnancy-related complications jeopardize the pregnant person's health;

     ii.   continuing the pregnancy would exacerbate an underlying health condition or interfere with the pregnant person's ability to obtain standard treatment for that condition;

     iii.  continuing the pregnancy would put the pregnant person at risk of death from self-harm;

    iv.    the embryo or fetus is diagnosed with a fatal or grave condition or miscarriage is inevitable; or

    v.    a multifetal pregnancy reduction would increase the likelihood of survival of the remaining fetuses.

e.  Award Plaintiff attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

f.  Grant such other and further relief as the Court may deem just, proper, and equitable.

Dated:  April 11, 2025

Respectfully submitted,

*/s/ Stephanie Toti*
Stephanie Toti*
stoti@lawyeringproject.org
LAWYERING PROJECT
41 Schermerhorn St., No. 1056
Brooklyn, NY 11201
Phone: (646) 490-1083
Fax: (646) 480-8622

Jamila Johnson*
jjohnson@lawyeringproject.org
LAWYERING PROJECT
3157 Gentilly Blvd., No. 2231
New Orleans, LA 70122
Phone: (347) 706-4981
Fax: (646) 480-8622

Tanya Pellegrini*
tpellegrini@lawyeringproject.org
LAWYERING PROJECT
584 Castro St., No. 2062
San Francisco, CA 98114
Phone: (646) 480-8973
Fax: (646) 480-8622

Paige Suelzle*
psuelzle@lawyeringproject.org
LAWYERING PROJECT
158 SW 148th Street, No. 1198
Burien, WA 98166
Phone: (347) 515-6073
Fax: (646) 480-8622

*Admitted pro hac vice

*Attorneys for Plaintiff*

Kelly O'Neill
koneill@legalvoice.org
Idaho Bar No. 9303
LEGAL VOICE
P.O. Box 50201
Boise, ID 83705
Phone: (208) 649-4942

Wendy S. Heipt*
wheipt@legalvoice.org
LEGAL VOICE
907 Pine Street, No. 500
Seattle, WA 98101
Phone: (206) 954-6798

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on April 11, 2025, the foregoing document was filed with the Clerk of the Court using the CM/ECF system, which will cause a copy to be served upon all counsel of record.

*/s/ Stephanie Toti*
Stephanie Toti