RAÚL R. LABRADOR
ATTORNEY GENERAL

JAMES E. M. CRAIG, ISB #6365
Chief, Civil Litigation and
Constitutional Defense

AARON M. GREEN, ISB #12397
KYLE D. GRIGSBY, ISB #10709
Deputy Attorneys General
Office of the Attorney General
P.O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
james.craig@ag.idaho.gov
aaron.green@ag.idaho.gov
kyle.grigsby@ag.idaho.gov

*Attorneys for Defendants Intervenor*
*Attorney General Raúl Labrador and*
*Members of the Idaho Board of Medicine*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| STACY SEYB, M.D.<br><br>                                    *Plaintiff*,<br><br>v.<br><br>MEMBERS OF THE IDAHO BOARD OF MEDICINE, in their official capacities; *et al.*,<br><br>                                    *Defendants*,<br><br>ATTORNEY GENERAL RAÚL LABRADOR<br><br>                                    *Intervenor.* | Case No. 1:24-cv-00244-BLW<br><br>**REPLY IN SUPPORT OF ATTORNEY GENERAL LABRADOR'S AND MEMBERS OF THE IDAHO BOARD OF MEDICINE'S MOTION FOR SUMMARY JUDGMENT [DKT. 79]** |

**INTRODUCTION**

Summary judgment is proper because Plaintiff cannot establish essential elements of his claims. Plaintiff lacks standing, has failed to present a genuine dispute of a material fact, and his other arguments amount to policy disputes with the Legislature. The Court should grant the motion.

**ARGUMENT**

## I.   Plaintiff lacks standing or third-party standing to bring any of his claims.

Plaintiff ignores the traceability problems that his deposition testimony causes for Article III standing, failing to discuss traceability anywhere in his 40-page response. *But see* Dkt. 79-1 at 12 (citing *Murthy v. Missouri*, 603 U.S. 43, 73 (2024)). This is telling. Take the example identified by Plaintiff: an End-Stage Renal Disease patient who *might* be able to have an abortion in the circumstances identified by his expert report. Dkt. 83 at 8 (citing Dkt. 83-3 at 288 ¶ 41). Because of Plaintiff's ignorance of the law, SOF ¶¶ 3–9, 11, any harm to the patient arises from his ignorance, not the law at issue. *See* Dkt. 79-1 at 11. Because Plaintiff cannot say whether, properly applied, Idaho's abortion statutes would have prohibited him from performing the abortions at issue, he lacks a traceable connection between his supposed injury and the statute.

Plaintiff's response to the *Driehaus* pre-enforcement issue is equally flawed. Plaintiff claims that because his complaint articulates categories of abortions that are prohibited by Idaho Code § 18-622, that "it is undisputed that [Idaho's abortion laws] prohibit some abortions that Dr. Seyb would otherwise perform." Dkt. 83 at 11. Not so—it is undisputed that Idaho laws prohibit *some abortions*. But because of his admissions, Plaintiff cannot say whether *he* would ever otherwise perform prohibited abortions when his actions have thus far been predicated on critical misunderstandings of Idaho's law. And even if it were true that Dr. Seyb could show standing as to *some* categories of abortions (i.e., fetal diagnosis or mental health, Dkt. 83 at 10–11), Plaintiff

must nonetheless "demonstrate standing for each claim that [he] press[es] and for each form of relief that [he] seek[s]." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). For abortions ostensibly necessary to preserve a mother's health, his deposition precludes that showing.[1]

## II. Plaintiff lacks standing to sue to vindicate abortions for mental health reasons.

Plaintiff's admission that he has never performed, nor been asked to perform, an abortion for mental health reasons precludes him from challenging the State's prohibition on such abortions. Dkt. 79-4 at 66:9–11. In fact, Plaintiff admits in his brief that he is unlikely to be asked to perform such an abortion in the future. *See* Dkt. 83 at 8 (admitting that such abortions are "rare"). That unlikelihood does not excuse Plaintiff from showing standing by competent proof—rather, it merely solidifies that any opinion by the Court would be purely advisory and outside the bounds of Article III.

Plaintiff believes it is enough that he has professed a desire to perform an abortion for mental health reasons in the off-chance that the situation presents itself. Dkt. 79-4 at 158:22–159:2 (hypothetical posed by his attorneys). Not so. "[T]he Constitution requires something more than a hypothetical intent to violate the law," and a "general intent to violate a statute at some unknown date in the future" is not enough. *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000); *Lujan v. Def. of Wildlife*, 504 U.S. 555, 564 (1992) ("some-day intentions" not enough); *Hartman v. Summers*, 120 F.3d 157, 160 (9th Cir. 1997).

---

[1] Plaintiff's footnote 4, disputing the importance of Plaintiff's admissions misses the mark on three points. First, Plaintiff's mention of a chilling effect in the First Amendment context is irrelevant— the First Amendment context is unique in its need for "breathing space." *Counterman v. Colorado*, 600 U.S. 66, 75 (2023) (quoting *United States v. Alvarez*, 567 U.S. 709, 733 (2012) (Breyer, J., concurring in judgment)). Again, Plaintiff is not raising a vagueness challenge, so he cannot show standing based on a misunderstanding of the law. Second, his argument ignores the Idaho Supreme Court's holding that necessity is "clearly a subjective standard, focusing on the particular physician's judgment." *Planned Parenthood Great Nw. v. State*, 171 Idaho 374, 445, 522 P.3d 1132, 1203 (2023). Third, it is not "hyperbolic" to say that "Dr. Seyb and St. Luke's were flying patients out of state in ignorance of the law's requirements." Dr. Seyb admitted he and St. Luke's flew patients out of state and admitted that he did not know the scope of the law when he did so. Dkt. 79-2 ¶¶ 2–12, 15.

Plaintiff also asserts that he once treated a patient who did not ask for and did not receive an abortion for mental health reasons, though she later unfortunately took her life. Dkt. 83 at 14. This is not enough to move standing out of the realm of speculation either—Plaintiff is bringing claims on behalf of women who *do* seek an abortion for mental health conditions. *Id.* at 15. The statutory provisions he is challenging played no role whatsoever in providing treatment to that former patient.

For these same reasons, any third-party standing arguments for such a claim fail. Not only does Plaintiff lack Article III standing in his own right, which he must have to assert third party claims, *see Fleck and Assocs., Inc. v. City of Phoenix*, 471 F.3d 1100, 1105 (9th Cir. 2006), his new admission that *he has not had* patients ask him for an abortion for mental health reasons, leaves him without standing to assert such claims on behalf of patients *he does not have*.

**III.  There is no genuine dispute of material fact as to a right to an abortion.**

As to Plaintiff's argument from history and tradition, Plaintiff is stuck. His experts have conceded that historical legal sources do not describe abortion as a fundamental right. Plaintiff attempts to cabin his expert's admissions by quibbling over words, Dkt. 83 at 22–23, 38–39, but forgets how broad his expert's admissions are: in coming to the conclusion that abortion for medical reasons is a deeply rooted right, Dr. Eppinger[2] admitted that she had to "rely on inferences" from the historical record because "rights *language*" once it came into being, was not

---

[2] Contra the response, Dkt. 83 at 17, 23. Plaintiff does actually have only one expert who can assist him at summary judgment, as Plaintiff's other historical expert (Dr. Cohen) was disclosed in time only to serve as a rebuttal expert—and thus can only be used to contradict Defendants' historical expert testimony. Dkt 83 at 6, 38 (date of disclosure), Dkt. 42 (deadline); *Lindner v. Meadow Gold Dairies, Inc.*, 249 F.R.D. 625, 635–36 (D. Haw. 2008) (discussing Fed. R. Civ. P. 26(a)(2)(C) and citing cases). But Defendants are not relying on their own expert for purposes of this motion, so Dr. Cohen's 'contextualizing' of things like the American Medical Association campaign against abortion (which does little but demonstrate that physicians disagreed about justifiable abortion) may not be considered. Dkt. 79-1 at 20 n.6; *Daggett v. United States*, No. 08-21026-CIV, 2010 WL 11553196, at *1 (S.D. Fla. Feb. 4, 2010) ("the plaintiffs cannot rely on experts designated solely as rebuttal experts in their case-in-chief to try to avoid summary judgment").

applied to abortion (or to medical care) before the 20th Century. Dkt. 79-6 at 20 (68:8–9, 15–16). Plaintiff therefore cannot show that the right to a medical abortion is "'deeply rooted in this Nation's history and tradition' and 'implicit in the concept of ordered liberty.'" *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 231 (2022) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997)). Instead, as with abortion generally, no relevant source "remotely suggests a positive *right* to procure an abortion." *Id.* at 245.

Thus, Plaintiff tries to run away from his own experts, confining them to mere helpful assistants in "how to contextualize . . . archaic legal authorities." Dkt. 83 at 38. But, ironically, this leads Plaintiff back to the conclusion that whether or not an abortion is deeply rooted in the nation's history and tradition is a question of law about which experts cannot opine. *See Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1016–17 (9th Cir. 2004). "Contextualiz[ing]" legal authorities (archaic or not) is what *judges* do, not experts—as Plaintiff's own cited cases reflect. Dkt. 83 at 19 (quoting *N.Y. State Pistol and Rifle Ass'n v. Bruen*, 597 U.S. 1, 25 n.6 (2022)). Since the relevant inquiry is legal, that means the question can be resolved at summary judgment and need not wait until a trial. *See Dobbs*, 597 U.S. at 239–40. Put another way, if this is a legal argument, summary judgment is proper. But, if arguments about inferences from legal documents are disputes of fact, Plaintiff's expert's admission that the relevant evidence does not exist to support Plaintiff's claim means that summary judgment is also proper, against Plaintiff's claim.[3]

In his discussion of history, Plaintiff mischaracterizes Defendants' argument. Defendants did not say the Court looks to *only* the legal *status* of abortion at the time of the Fourteenth

___

[3] Plaintiff's assertion without citation that the question of deep rootedness is a "mixed question of law and fact" is error—this Court is ultimately answering the legal question "what the *Fourteenth Amendment* means by the term 'liberty.'" *Dobbs*, 597 U.S. at 240. Abstract testimony about historical beliefs or practices surrounding abortion cannot show that the practice in question was "*permissible* at common law—much less that [it] was a legal *right*." *Id.* at 243.

Amendment (*but see* Dkt. 83 at 24–25) but argued that the legal *tradition* as it existed at the time of the Fourteenth Amendment is the central inquiry. Dkt. 79-1 at 16. As the Supreme Court has said: the "most important historical fact" in determining the existence of an unenumerated right to abortion is "how the States regulated abortion when the Fourteenth Amendment was adopted"—history from other time periods are informative only if they illuminate the status of abortion as of 1868. *Dobbs*, 597 U.S. at 272.[4] Plaintiff's use of authority over a century after, and four centuries before, ratification ignores the Supreme Court's warnings, what *this* Court said it was looking for (*See* Dkt. 54 at 29 n.4), and the fact that the *Dobbs* Court's use of post-ratification history was simply to undermine the *Roe* Court's fast-and-loose treatment of tradition. 597 U.S. at 241.

Similarly, Plaintiff attempts to loosen the requirement for a clear statement in the historical record, arguing that because older cases have found a fundamental right on scant evidence, this Court can as well. Dkt. 83 at 23–24. To the contrary, the Court may not refer to *Griswold* or *Lawrence* or *Obergefell* for historical method simply because *Dobbs* said that the rights established by those cases were not overruled. *Dobbs* decided not only whether *Roe* was wrongly decided, but also whether stare decicis protected it—and in answering *the second question*, the Court found that the rights to contraception or same-sex marriage had distinct reliance interests, but that abortion did not merit stare decisis protection because it destroys "the life of an unborn human being." 597 U.S. at 257 (cleaned up). It did not bless the historical work (or lack thereof) of past cases.

As for historical sources, Plaintiff goes for quantity over quality—for all the ideas Plaintiff throws out, none is remotely close to showing a deeply rooted legal tradition existing at the time of ratification. Plaintiff appeals to:

---

[4] *See Bruen*, 597 U.S. at 34–35 ("Historical evidence that long predates [ratification] may not illuminate the scope of the right," and "we must also guard against giving postenactment history more weight than it can rightly bear").

- the right of self-defense, without citing a shred of legal or historical authority applying that right in the abortion context. *See Dobbs*, 597 U.S. at 257 (rejecting "attempts to justify abortion through appeals to a broader right," like autonomy);

- the supposed right for prisoners to obtain medical treatment contained in the Eighth Amendment, even though that right (1) is ahistorical, *Helling v. McKinney*, 509 U.S. 25, 38–41 (1993) (Thomas, J., dissenting), (2) applies only to those in state custody, and (3) has apparently never been applied to abortion, *see Dobbs*, 597 U.S. at 257;

- the alleged absence of regulation of medicine before 1830, which does not show any protected fundamental right, and ignores that States had widely criminalized abortion by the time the Fourteenth Amendment was ratified, *see Dobbs*, 597 U.S. at 248;

- a slew of varying state statutes prohibiting abortion—only two of which by 1868 mention abortions for health reasons other than to save the life of the mother— demonstrating that states had freedom to deal with abortion exceptions as they variously saw fit;

- Bracton and Hale's articulation of the absence of liability for murder when a doctor treats a patient, but mischaracterizing a failure to meet the elements of a crime as "immunity" and ignoring *Dobbs*'s recognition that Hale and Blackstone treated abortion differently (and more to the point, worse for the physician) than medical procedures that resulted in death generally, 597 U.S. at 245;

- cases involving the non-intentional death of a fetus opining that a fetus is not a person, even though *Dobbs* stated that the Constitution imposes no "particular theory about when the rights of personhood begin[,]" 597 U.S. at 263;

- a set of jury instructions from a single judge in England in 1938, which sheds no light whatsoever on the public understanding of the Fourteenth Amendment at ratification;

- American cases from the mid- to late- 20th century construing distinct state statutes and reaching different conclusions on when abortion would be justified;

Beyond these non-starters, attempts to defeat summary judgment primarily by pointing to gaps and omissions—such as the absence of prosecutions or the absence of legal prohibitions in a particular time period—rather than affirmative legal protections. Dkt. 83 at 29–30; *e.g.*, *District of Columbia v. Heller*, 554 U.S. 570, 592–95 (2008); *Timbs v. Indiana*, 586 U.S. 146, 151–53 (2019). This is precisely what *Dobbs* rejected. As the Court explained, even assuming "that many States in the late 18th and early 19th century did not criminalize" the abortions at issue, it "does not mean that anyone thought the States lacked the authority to do so" because of some deeply rooted

fundamental right. *Dobbs*, 597 U.S. at 253. Plaintiff fails to cite a *single* example of affirmative protection of abortion for a medical reason, rather than being something that courts or legislatures simply chose not to punish.[5]

\* \* \*

The historical record put forward by Plaintiff is startlingly akin to the record relied upon by *Roe,* and rejected by *Dobbs*—a right based on *gaps* in the evidence, and irrelevant cases like a 1938 English decision and cases discussing implied exceptions from 75 or 100 years after ratification, rather than affirmative protections that would lie in the legal traditions understood by the framers of the Fourteenth Amendment. *See Roe v. Wade*, 410 U.S. 113, 129–47 (1973); *but see Dobbs*, 597 U.S. at 271–72. The historical record, taking all of it in favor of Plaintiff, is this: when policymakers wanted to criminalize abortion, they did so. When they didn't, they didn't. But in either case, nothing stood in the way of policy makers drawing the line where they saw fit.

*Dobbs* already answered the question presented—it canvassed historical protections for abortion and found no fundamental right, even in some subset of abortions. Nothing about Plaintiff's evidence proves anything other than what *Dobbs* concluded: the power to regulate abortion (like medicine) historically lay with "the people and their elected representatives." 597 U.S. at 302.

### IV.  Plaintiff has failed to show irrationality in Idaho's abortion statutes.

Plaintiff uses his as-applied challenge to try to sand down the edges of a statute that he believes could work better, Dkt. 83 at 39–42, but his argument for irrationality demonstrates that

---

[5] It is telling that, in trying to craft a new constitutional right to abortion, Plaintiff fails to give "a careful description of the asserted fundamental liberty interest." *Glucksberg*, 521 U.S. at 721 (internal quotation marks omitted). What exactly is the boundary of the right we are now tasked with identifying? A penumbral emanation of self-defense? An even *more* expansive right to medical treatment by the manner and means one chooses? Who knows?

he simply disagrees with the policies of the legislature. Under rational basis review, a Court "need only determine whether the legislation has a conceivable basis on which it might survive constitutional scrutiny." *Franceschi v. Yee*, 887 F.3d 927, 939 (9th Cir. 2018) (citation and internal quotation marks omitted). Courts must "uphold a law under rational basis review if the government has a legitimate interest in enacting the statute, and the law is rationally related to that interest." *Raidoo v. Moylan*, 75 F.4th 1115, 1121 (9th Cir. 2023). A law may be over-inclusive, under-inclusive, unscientific, or a "rough accommodation" without lacking a rational basis. *Id*. (citation omitted); *accord Gallinger v. Becerra*, 898 F.3d 1012, 1017–18 (9th Cir. 2018). "[P]erfection is by no means required." *Vance v. Bradley*, 440 U.S. 93, 108 (1979).

Plaintiff says that protecting unborn children with a potentially fatal condition from being aborted is irrational because there is no sense in forcing mothers to carry children that will not survive after birth. But that assumes that doctors are perfectly accurate in administering fatal diagnoses—which experience has shown is not the case. *See* Dkt. 79-12 at 25 (87:6–89:7) (discussing testing for disorders and acknowledging possibility for incorrect results). *Dobbs* recognized that a State has a legitimate interest in "respect for and preservation of *prenatal* life at *all* stages of development," 597 U.S. at 301 (emphases added), and that interest is furthered by preventing abortion when an unborn child has any chance of survival, regardless of the unwelcome probabilities the child faces later in development. Plaintiff may not agree, but that does not mean it was irrational for the Idaho Legislature to place a higher value on prenatal life.

Similarly, Plaintiff's argument regarding multi-fetal pregnancy reduction amounts to nothing more than a policy objection. He argues that in some cases it is reasonable to take the life of one healthy unborn child to save others. Dkt. 83 at 40. This objection is no answer to the obvious rational basis for legislative line drawing: it respects and furthers prenatal life not to kill an unborn

child with some possibility of life outside the womb, including in the service of probabilities. Moreover, Plaintiff misstates the classification at issue: a multi-fetal pregnancy reduction is not done *only* in cases where the alternative is the *certain* death of all siblings—as his Amended Complaint states, it is done to change *probabilities*. Dkt. 56 at 17–18. In any event, his personal belief that the line should be drawn differently cannot show that the line was irrationally drawn.

## V.    Plaintiff's Equal Protection claim fails.

Plaintiff's Equal Protection claim fails too. Plaintiff agrees that his claim is subject to rational basis review, Dkt. 83 at 38, meaning he must show that there is no "conceivable legitimate purpose [that] could have supported" the State's distinction between women with medical concerns arising from mental health and those physical health complications. *Raidoo*, 75 F.4th at 1121 (rational basis upholds even laws that rest on "rational speculation," and those "unsupported by evidence or empirical data"). Plaintiff may personally disagree with the distinction, and may have marshalled legal conclusions from his experts, but that comes nowhere close to meeting his burden.

First, it was rational for the State to conclude that the threat of self-harm is different than other threats, and that treatments other than abortion are preferrable to address the threat. Dkt. 83 at 45–46. The distinction literally is in the name—self-harm is caused by oneself, whereas other health conditions and circumstances can threaten the mother's life without any action on her part. Whether or not the mental health condition has an underlying biological basis is irrelevant—the actual act of self-harm can be physically prevented (say, by hospitalizing someone in distress) in a way that cannot be done for other medical conditions. *See* Dkt. 79-5 at 18 (58:4–14).

Plaintiff hardly disputes that hospitalization can adequately treat a risk of self-harm without risking fetal life, much less that a rational legislature could have believed as much. Indeed, while Plaintiff criticizes some other alternative treatments for mental health, he cites *no* evidence

showing that *abortion* is an adequate treatment for the underlying conditions that result in self-harm, and the sole incident (which is just an example of *post hoc ergo propter hoc* with no medical analysis) mentioned in Plaintiff's Appendix (Dkt. 83-3 at 202–03) is not evidence so overwhelming that a legislature would be irrational to conclude otherwise.

Second, a desire to self-harm can be professed by anyone, and a medical professional's ability to verify the authenticity of that *desire* cannot be as empirically certain as when verifying other medical threats. Observing as much does not reflect animus (as Plaintiff baselessly suggests, Dkt. 83 at 46), but reflects the indisputable fact that some people lie. And because suicidal ideation is impossible to verify, it is no great leap to assume that some people would express such a desire in order to obtain an abortion. *See* UK Abortion Statistics 2022 (noting that 98% of 247,440 abortions in the United Kingdom were justified by the early developmental state of the unborn child and that 99% of those were done because of a reported risk to the mental health of the mother).[6] Allowing the profession of a desire to self-harm to justify abortion would destroy the policy the Legislature intended with its abortion laws, and threaten thousands of unborn lives.

It is no disrespect to those who genuinely struggle with mental illness or suicidality in or after pregnancy to note that means other than an abortion are available to treat these conditions. The Court doesn't have to agree with the State's policy rationales, but there is no question that the State has provided a reasonable rationale for favoring alternative treatments for mental health.

CONCLUSION

For the foregoing reasons, the Court should grant the pending Motion for Summary Judgment and dismiss all causes of action in the Amended Complaint.

---

[6] https://www.gov.uk/government/statistics/abortion-statistics-for-england-and-wales-2022/abortion-statistics-england-and-wales-2022

DATED: November 26, 2025

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL


/s/ *Aaron M. Green*
AARON M. GREEN
Deputy Attorney General

*Attorney for Defendants Intervenor Attorney*
*General Raúl Labrador and Members*
*of the Idaho Board of Medicine*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT on November 26, 2025, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Jamila Johnson
jjohnson@lawyeringproject.org

Tanya Pellegrini
tpellegrini@lawyeringproject.org

Paige Suelzle
psuelzle@lawyeringproject.org

Stephanie Toti
stoti@lawyeringproject.org

Wendy S. Heipt
wheipt@legalvoice.org

Ronell Tshiela
rtshiela@lawyeringproject.org

*Attorneys for Plaintiff*

Kelly O'Neill
koneill@legalvoice.org

/s/ *Aaron M. Green*
AARON M. GREEN