RAÚL R. LABRADOR
ATTORNEY GENERAL

YVONNE DUNBAR, ISB #7200
Chief Counsel

JAMES E. M. CRAIG, ISB #6365
Chief, Civil Litigation and
Constitutional Defense

AARON M. GREEN, ISB #12397
KYLE D. GRIGSBY, ISB #10709
Deputy Attorneys General
Office of the Attorney General
P.O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
james.craig@ag.idaho.gov
aaron.green@ag.idaho.gov
kyle.grigsby@ag.idaho.gov

*Attorneys for Defendants Members
of the Idaho Board of Medicine, and
Intervenor Attorney General Raúl Labrador*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| STACY SEYB, M.D.<br><br>     *Plaintiff*,<br><br>v.<br><br>MEMBERS OF THE IDAHO BOARD OF MEDICINE, in their official capacities; *et al.*,<br><br>     *Defendants*, | Case No. 1:24-cv-00244-BLW<br><br>**ATTORNEY GENERAL LABRADOR'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

Attorney General Labrador, Intervenor, submits these proposed Findings of Fact and Conclusions of Law.

## I.    Preliminary Issues

Plaintiff Dr. Stacy Seyb lacks standing to bring any of his claims, on behalf of himself or any hypothetical patients. The Board of Medicine is also not a proper Defendant.

### A.  Proposed Findings of Fact

1. Prior to this lawsuit, and at the time the lawsuit was filed, Plaintiff did not know that the Idaho Defense of Life Act did not require "a particular level of immediacy" in the threat to a mother's life to perform an abortion under the life-of-the-mother exception. *Planned Parenthood Great Nw. v. State*, 522 P.3d 1132, 1203 (Idaho 2023).

2. Prior to this lawsuit, and at the time the lawsuit was filed, Plaintiff did not know that the Idaho Defense of Life Act did "not require *objective* certainty" that a mother's life is at risk in order to perform an abortion under the life-of-the-mother exception. *Id.*

3. Prior to this lawsuit, and at the time the lawsuit was filed, Plaintiff believed that an abortion was permitted only when a woman was in a very unstable condition, contrary to Idaho law as interpreted in *Planned Parenthood Great Nw.*

4. Plaintiff did not receive any training on the Idaho Defense of Life Act.

5. Prior to this lawsuit, Plaintiff had not read the *Planned Parenthood Great Nw. v. State* case, nor had he received any training on the case. Physicians have an obligation to understand and obey laws related to their profession.

6. Consequently, Plaintiff's profession that he intends to start practicing abortions which are prohibited under the statute is not credible, as he has not previously attempted to determine whether an abortion would be allowed under Idaho law under the actual standard used under Idaho law, and cannot know whether the abortions he has performed in the past would be allowed under Idaho law.

7. Prior to this lawsuit, and at the time the lawsuit was filed, Plaintiff did not perform abortions for reasons of mental health, and has never been asked to perform such an abortion in his 20 years of practice.

8. Plaintiff practices in an in-patient setting, and Plaintiff testified that abortions done for mental health reasons are performed in an outpatient setting. He stated that an abortion for mental health reasons would probably need to occur earlier in pregnancy and would be less expensive at an outpatient facility. He indicated that his outpatient facility does not perform abortions. Accordingly, the nature of his medical practice makes it exceptionally unlikely that he will ever perform an abortion for mental health reasons.

9.    Plaintiff at most has a hypothetical intent to violate the law at some unknown date in the future. It is highly speculative whether Plaintiff will ever receive a request to perform an abortion for mental health reasons.

10.   Consequently, Plaintiff's statement that he intends to perform abortions for reasons of protecting the pregnant woman's mental health is not credible.

11.   Plaintiff can only speculate in estimating how many patients he may have in the future on a month-to-month basis that will, in his estimation, want an abortion in situations that are currently not allowed under Idaho law. Given his ignorance as to the meaning of Idaho's law, he also cannot opine on whether any of those cases would be allowed under Idaho law or not.

12.   The Idaho Board of Medicine (including its agents, employees or officers of the Idaho Board of Medicine) has never threatened Plaintiff with discipline for performing an abortion.

13.   Neither the Ada County Prosecuting Attorney nor Attorney General Raúl Labrador, nor any other Idaho prosecutorial authority, has threatened Plaintiff with prosecution for performing an abortion.

14.   There is no evidence before the Court of any threat by any prosecutorial authority within Idaho to prosecute any doctor for violating Idaho Code § 18-622 or Idaho Code § 18-8805.

15.   The Idaho Board of Medicine interprets its authority to impose a professional license suspension for a violation of Idaho Code § 18-622 or Idaho Code § 18-8805 as arising only when a doctor has been convicted in criminal court of violating Idaho Code § 18-622 or Idaho Code § 18-8805.

16.   The Idaho Board of Medicine has disavowed any authority to impose a professional license suspension on any doctor for a violation of Idaho Code § 18-622 or Idaho Code § 18-8805 unless the doctor has first been convicted in criminal court of violating Idaho Code § 18-622 or Idaho Code § 18-8805.

**B.  Proposed Conclusions of Law**

The Board of Medicine is not an appropriate defendant and Plaintiff lacks both first-party and third-party pre-enforcement standing.

### i.    *Members of the Idaho Board of Medicine Authority.*

17.   The Members of the Idaho Board of Medicine lack authority to suspend the professional license of any health care professional for violating the Defense of Life Act, Idaho Code § 18-622, unless that health care professional is first convicted in the criminal court of violating Idaho Code § 18-622.

18.    The Members of the Idaho Board of Medicine lack authority to suspend the professional license of any health care professional for violating the Fetal Heartbeat Preborn Child Protection Act, Idaho Code § 18-8805, unless that health care professional is first convicted in the criminal court of violating Idaho Code § 18-8805.

19.    Idaho Code § 19-101 restricts punishment for criminal offenses, such as Idaho Code § 18-622 and Idaho Code § 18-8805, to circumstances in which a legal conviction in a court having jurisdiction is obtained.

20.    While Idaho Code § 54-1814(6) permits the Board of Medicine to discipline a doctor for performing an unlawful abortion, Idaho Code § 19-101 does not permit such discipline as a punishment for a violation of Idaho Code § 18-622 or 18-8805 unless the doctor has first been convicted of violating those sections in criminal court. Further, the Idaho Board of Medicine has disavowed any authority to impose a professional license suspension for a violation of Idaho Code § 18-622 or Idaho Code § 18-8805 unless there is first a conviction in criminal court.

21.    An official capacity suit under *Ex parte Young* is only permissible where the defendant has "fairly direct" "connection with the enforcement" of the challenged laws. *Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992).

22.    Plaintiff has sued to enjoin enforcement of two criminal statutes, Idaho Code § 18-622 and § 18-8805.

23.    The Board of Medicine and its members lack criminal prosecutorial authority.

24.    Consequently, the Members of the Idaho Board of Medicine do not possess enforcement authority sufficient to make them appropriate defendants for injunctive relief pursuant to *Ex parte Young* in the absence of an actual conviction for the violation of Idaho Code § 18-622 or Idaho Code § 18-8805.

### ii.    Standing

25.    Plaintiff lacks standing to bring either of his claims.

26.    Plaintiff fails to raise his own liberty interest in performing abortions that are otherwise unlawful under the challenged abortion statutes.

27.    But to show Article III injury, Plaintiff must describe an invasion of his own "legally protected interest." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *see also Fellowship of Christian Athletes v. San Jose Unif. Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 680–81 (9th Cir. 2023).

28.    In the absence of Plaintiff having a "legally protected interest" to perform any specific procedure, *Lambert v. Yellowley*, 272 U.S. 581, 596 (1926); *Leigh v. Olson*, 497 F.Supp. 1340, 1345 n.2 (D.N.D. 1980), Plaintiff cannot show a concrete and particularized injury.

29.    Thus, he lacks first party standing sufficient to bring his claims or the claims of others. *Fleck and Assoc. v. City of Phoenix*, 471 F.3d 1100, 1105 (9th Cir. 2006).

30.    As to Plaintiffs' claims of third party standing, Plaintiff fails to show the necessary connection to a specific third party who suffers an injury in fact. Plaintiff does not show that any specific patient has a claimed medical need for an abortion that is prohibited by Idaho Code § 18-622 or Idaho Code § 18-8805. Specific to Count II, Plaintiff has never had a patient ask him for an abortion for a mental health reason.

## II.    Conclusions of Law on the Merits

31.    All facts relevant to adjudication of the merits of a claim of a fundamental right are legislative facts. "Only adjudicative facts are determined in trials, and only legislative facts are relevant to the constitutionality of [a challenged law]." *Nathan v. Alamo Heights Indep. Sch. Dist.*, ___ F.4th ____, 2026 WL 1078691, at *23 n.57 (5th Cir. Apr. 21, 2026) (en banc) (quoting *Moore v. Madigan*, 702 F.3d 933, 942 (7th Cir. 2012) and collecting cases)).

32.    Thus, all findings relevant to the constitutionality of Idaho's abortion prohibitions are "legislative facts," determined by a court, i.e., conclusions of law. *Nathan*, ___ F.4th ____, n.57; *see also N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 25 (2022). To the extent the Court disagrees, the Members of the Board of Medicine and the Attorney General alternatively propose the following as findings of facts where appropriate.

33.    As relevant for purposes of this case, the Defense of Life Act prohibits abortions unless the "physician determined, in his or her good faith medical judgment and based on the facts known to the physician at the time, that the abortion was necessary to prevent the death of the pregnant woman." Idaho Code § 18-622(1) and (2). Abortion is defined in Idaho Code § 18-604(1) as "the use of any means to intentionally terminate the clinically diagnosable pregnancy of a woman with knowledge that the termination by those means will, with reasonable likelihood, cause the death of the unborn child." It excludes the following: (a) "the use of an intrauterine device or birth control pill to inhibit or prevent ovulations, fertilization, or the implantation of a fertilized ovum within the uterus;" (b) the "removal of a dead unborn child;" (c) the "removal of an ectopic or molar pregnancy;" and (d) the "treatment of a woman who is no longer pregnant." Idaho Code § 18-604(1)(a)-(d). The terms "pregnant" and "pregnancy" "mean the reproductive condition of having a developing fetus in the body and commences with fertilization." Idaho Code § 18-604(11).

34.    The Defense of Life Act, Idaho Code § 18-622, provides that "[n]o abortion shall be deemed necessary to prevent the death of the pregnant woman because the physician believes that the woman may or will take action to harm herself." Idaho Code § 18-622(2)(a)(i).

35.    When an abortion is allowed to be performed under the Defense of Life Act, the physician is required to perform or attempt to perform the abortion "in the manner that, in his good faith medical judgment and based on the facts known to the physician at the time, provided the best opportunity for the unborn child to survive, unless, in his good faith medical

judgment, termination of the pregnancy in that manner would have posed a greater risk of the death of the pregnant woman." Idaho Code § 18-622(2)(2)(ii).

36.    The Fetal Heartbeat Preborn Child Protection Act prohibits abortions "when a fetal heartbeat has been detected, except in the case of a medical emergency, in the case of rape[,] … or in the case of incest." Idaho Code §§ 18-8804, 8805. The term "medical emergency" is defined as "a condition that, in reasonable medical judgment, so complicates the medical condition of a pregnant woman as to necessitate the immediate abortion of her pregnancy to avert her death or for which a delay will create serious risk of substantial and irreversible impairment of a major bodily function." Idaho Code § 18-8801(5). The criminal penalties of the Fetal Heartbeat Preborn Child Protection Act are superseded when the Defense of Life Act, Idaho Code § 18-622, is enforceable. Idaho Code § 18-8805(4). Since Idaho Code § 18-622 is currently enforceable, Idaho Code § 18-8805 is superseded by Idaho Code § 18-622 and not currently enforceable.

## A.  Count 1 – Substantive Due Process Claim

### i.    *There is no fundamental right to an abortion for any purpose*

37.    "The Due Process Clause specially protects those fundamental rights and liberties which are, objectively 'deeply rooted in this Nation's history and tradition' and 'implicit in the concept of ordered liberty' such that 'neither liberty nor justice would exist if they were sacrificed.'" *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (citation omitted).

38.    A court must "exercise the utmost care before breaking new ground in the area of unenumerated fundamental rights." *Khachatryan v. Blinken*, 4 F.4th 841, 856 (9th Cir. 2021) (citation modified).

39.    Plaintiff has the burden to "show a deprivation of some fundamental right or liberty interest that is 'deeply rooted in this Nation's history and tradition.'" *Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1061 (9th Cir. 2006) (quoting *Glucksberg*, 521 U.S. at 720-21).

40.    Plaintiff must provide "a careful description of the asserted fundamental liberty interest." *Khachatryan*, 4 F.4th at 856 (citation modified).

41.    The absence of historical regulation of a practice does not indicate a fundamental right. *See Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 253 (2022) ("[T]he fact that many States in the late 18th and early 19th century did not criminalize pre-quickening abortions does not mean that anyone thought the States lacked the authority to do so. When legislatures began to exercise that authority as the century wore on, no one, as far as we are aware, argued that the laws they enacted violated a fundamental right."). Second Amendment cases do not provide the proper rule. Because those cases involve an enumerated right, the government must "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. 1, 24. With unenumerated rights, the plaintiff must prove a liberty interest.

ATTORNEY GENERAL LABRADOR'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW —5

42.   "The Constitution makes no reference to abortion, and no such right is implicitly protected by any constitutional provision, including . . . the Due Process Clause of the Fourteenth Amendment." *Dobbs*, 597 U.S. at 231.

43.   "[A]bortion is not a fundamental right." *Raidoo v. Moylan*, 75 F.4th 1115, 1125 (9th Cir. 2023).

44.   "The permissibility of abortion, and the limitations, upon it, are to be resolved like most important questions in our democracy: by citizens trying to persuade one another and then voting." *Dobbs*, 597 U.S. at 231 (quoting *Planned Parenthood v. Casey*, 505 U.S. 833, 979 (1992) (Scalia, J. dissenting)).

45.   As the United States Supreme Court also recognized in *United States v. Skrmetti*, 605 U.S. 495 (2025), the regulation of medical treatment, including where health impacts are disputed, is subject to rational basis review. There is no fundamental right to abortion as medical treatment.

46.   The same history described by *Dobbs* that precludes a finding that a deeply rooted fundamental right to abortion exists as a general principle, also precludes a finding that a deeply rooted fundamental right to abortion exists for reasons of health or mental health.

47.   No English or American legal authority before the mid-20th Century posited that abortion, for any purpose, constituted a fundamental right.

48.   To the extent that common law writers treated abortion, they treated it as a crime. None of the eminent common law writers, Bracton, Mathew Hale, and Edward Coke contemplated a right to abortion for reasons of health. Indeed, as the Supreme Court acknowledged, Hale and Blackstone treated abortionists differently from other doctors who caused the death of a patient, because causing an abortion was unlawful *per se*. *Dobbs*, 597 U.S. at 244–45.

49.   In 21 cases from 19 states[1], courts interpreted pre-*Roe* "life of the mother" statutes to either expressly or implicitly prohibit abortion for health reasons, including cases both affirming

---

[1] Arizona (*Nelson v. Planned Parenthood Ctr. of Tucson, Inc.*, 505 P.2d 580, 584–85 (Ariz. App. 1973)), California (*People v. Belous*, 458 P.2d 194, 204 (Cal. 1969)), Connecticut (*Abele v. Markle*, 342 F.Supp. 800, 803 n.10, n.13 (D. Conn. 1972), Delaware (*State v. Riley*, 256 A.2d 273, 274–75 (Del. Super. Ct. 1969)), Florida (*State v. Barquet*, 262 So.2d 431, 434–35 (Fla. 1972)), Idaho (*Planned Parenthood Great Nw. v. State*, 522 P.3d 1132, 1193 (Idaho 2023)), Illinois (*People ex rel. Hanrahan v. White*, 285 N.E.2d 129, 130–31 (Ill. 1972)), Indiana (*Cheaney v. State*, 285 N.E.2d 265, 271 (Ind. 1972)), Iowa (*State v. Abodeely*, 179 N.W.2d 347, 354 (Iowa 1970)), Kentucky (*Sasaki v. Commonwealth*, 485 S.W.2d 897, 901 (Ky. App. 1972)), Louisiana (*Rosen v. Louisiana State Board of Medical Examiners*, 318 F.Supp. 1217, 1220 (E.D. La. 1970)), Missouri (*Rodgers v. Danforth*, 486 S.W.2d, 258, 259 (Mo. 1972); *see also id.* at 260-61 (Seiler, J. dissenting)), Ohio (*Steinberg v. Brown*, 321 F.Supp. 741, 744 (N.D. Ohio 1970)), Oklahoma (*Oklahoma Call for Reproductive Justice v. Drummond*, 526 P.3d 1123, 1130–31 (Okla. 2023)), South Dakota (*State v. Munson*, 201 N.W.2d 123, 127 (S.D. 1972)), Texas (*Thompson v. State*, 493 S.W.2d 913, 920 &

the constitutionality of state statutes or finding them unconstitutional (such as under a vagueness challenge like in the California Supreme Court's decision in *Belous*).

50. Indiana's state supreme court indicates that states may go further than Idaho. Indiana's court found that the words "necessary to preserve her life" require that "continu[ing] the pregnancy will directly and proximately result in the death of the mother." *Cheaney v. State*, 285 N.E.2d 265 (Ind. 1972).

51. Illinois is also of particular note—that state supreme court rejected a psychological exception to its abortion prohibitions in *People ex rel. Hanrahan v. White*, 285 N.E.2d 129 (Ill. 1972), and noted that the state had repeatedly rejected attempts to add general health exceptions.

52. With the exception of North Dakota's Supreme Court in *Wrigley v. Romanick*, 988 N.W.2d 231 (N.D. 2024), no state supreme court has found that a pre-*Roe* life-of-the-mother statute encompassed a health-of-the-mother exception.

53. In short, state statutory history, the "most important historical fact" relied on by the *Dobbs* majority, 597 U.S. at 272, supports the proposition that abortions to preserve the health, rather than the life, of the mother were not considered deeply rooted.

54. More to the point, until a few years before *Roe* was decided, "no federal or state court had recognized" a right to an abortion, including by striking down a state statute on the grounds that it failed to include a health exception. *Dobbs*, 597 U.S. at 241. Plaintiff has failed to show that any pre-*Roe* state statute prohibiting abortion was found to be unconstitutional on the grounds of a fundamental right to abortion to preserve the health of the mother, or on grounds of self-defense or necessity. That some state statutes allowed for an abortion in situations necessary to protect the health of the mother does not provide evidence that statutes that prohibited abortions when necessary to protect the health of the mother were unconstitutional.

55. Plaintiff has also failed to meet his burden to set forth a "careful description" of his asserted right.

56. Plaintiff sets forth a description in paragraphs 125 and 126 of the Amended Complaint, Dkt. 56. He describes this right to abortion as applying "in circumstances where pregnancy-related complications jeopardize the pregnant person's health; continuing the pregnancy would exacerbate an underlying health condition or interfere with the pregnant person's ability to obtain standard treatment for that condition; continuing the pregnancy would put the pregnant person at risk of death from self-harm; the embryo or fetus is diagnosed with a fatal or grave condition or miscarriage is inevitable; or a multifetal pregnancy reduction would increase the likelihood of survival of the remaining fetuses."

n.2 (Tex. Crim. App. 1972)), Utah (*Doe v. Rampton*, No. C-234-70, Opinion and Judgment 5–6 (D. Utah Sep. 29, 1971) (upholding law)), Vermont (*Beecham v. Leahy*, 287 A.2d 836, 839 (Vt. 1972)), and Wisconsin (*Babbitz v. McCann*, 310 F.Supp. 293, 298 (E.D. Wis. 1970)).

57. However, a right to an abortion in "circumstances where pregnancy-related complications jeopardize the pregnant person's health" or in circumstances where "continuing the pregnancy would exacerbate an underlying health condition" is not a careful description. Indeed, it is unclear how or when that might apply. Does it apply when a pregnancy causes severe morning sickness but that morning sickness can be treated by means other than an abortion? Does it apply when there is only a minor "exacerbation" of an underlying health condition? How much must pregnancy exacerbate an underlying health condition for there to be a fundamental right to an abortion? What degree of jeopardy, short of a threat to the pregnant woman's life, is necessary? How serious must the health condition be?

58. Similarly, the description as including circumstances in which "continuing the pregnancy would put the pregnant person at risk of death from self-harm" is not a careful description. What type of self-harm would be included? Only suicide? What about cutting or some other form of self-harm short of suicide? What about not eating enough?

59. It is the same with the rest of the plaintiff's descriptions. What is a fatal or grave condition for a fetus? How would that be defined? How much of an increase in the likelihood of survival of one fetus would justify killing another fetus?

60. Plaintiff's description of the asserted right is not a careful description. Indeed, it is impossible for the Court to answer the above questions as a matter of constitutional interpretation. As the U.S. Supreme Court has made clear, courts must "exercise the utmost care whenever we are asked to break new ground in this field." *Reno*, 507 U.S. at 302 (internal quotation and citation omitted). The Court cannot "exercise the utmost care" given the vague and unclear description of the asserted right set forth by the Plaintiff.

61. The Plaintiff's asserted constitutional right to perform an abortion in certain circumstances also cannot be justified under the right to self-defense or the common-law defense of necessity. The common law does not recognize a right to self-defense, or a defense of necessity, when it comes to the killing of an innocent life. "The choice of evils rationale necessarily presumes that the threatened harm to the defendant is greater than the resulting harm from the defendant's commission of the crime. When the defendant commits murder under duress, the resulting harm—i.e. the death of an innocent person—is at least as great as the threatened harm—i.e. the death of the defendant. For this reason, the common law rejected duress as a defense to murder." *United States v. LaFleur*, 971 F.2d 200, 205 (9th Cir. 1991) (citing LaFave & Scott, Am. Jur., C.J.S., and William Blackstone, among other sources). Thus, "a defendant should not be excused from taking the life of an innocent third person because of the threat of harm to himself." *Id.* at 206.

62. In Idaho, the common law defense of necessity has been described as requiring, among other elements, proof that the "harm caused was not disproportionate to the harm avoided." *State v. Meyer*, 161 Idaho 631, 635, 389 P.3d 176, 180 (2017).

63. Similarly, self-defense, as developed at common law, is a response to "unlawful" force. *United States v. Urena*, 659 F.3d 903, 907 (9th Cir. 2011); *United States v. Peterson*, 483

F.2d 1222, 1229 (D.C. Cir. 1973) (discussing common law). Stated another way, "the use of force is permitted 'when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by [another] person on the present occasion.'" *United States v.* Simpson, 460 F.2d 515, 517 (9th Cir. 1972) (quoting Model Penal Code § 3.04 (1958 Tent. Draft No. 8) (alteration in original). A child in utero does not impose any unlawful force on a pregnant woman.

64.    Self-defense requires the "use of no more force than was reasonably necessary in the circumstances." *Urena*, 659 F.3d at 907; *see Peterson*, 483 F.2d at 1229.

65.    Further, the "assertion of the necessity defense requires that optional courses of action appear unavailable." *United States v. Mowat*, 582 F.1d 1194, 1208 (9th Cir. 1978).

66.    Since every completed abortion results in the death of the innocent unborn child, an abortion to prevent a health issue for the pregnant woman, or, in the case of a multi-fetal pregnancy reduction, to simply increase the odds of survival of another unborn child is always going to be at least equal to, if not greater than, the harm sought to be avoided. In other words, using the language from the Ninth Circuit in *LaFleur*, the resulting harm—the death of an innocent unborn child—is at least as great as the threatened harm—a health issue for the pregnant woman or a perceived diminished chance of survival of another unborn child in the womb.

67.    Determining whether other optional courses of action are available would be a highly fact-specific analysis dependent on the individual situations of each unique pregnancy. For example, in cases of mental health, there are always treatment options available that do not include terminating the life of the unborn child. In other situations involving a threat to the health of the pregnant woman, it would be impossible to carefully describe a constitutional right to an abortion in cases in which the pregnant mother's health is threatened that fully takes into account whether other reasonable treatment options are available short of terminating the life of the unborn child. Those types of line-drawing exercises are best left for the people of the State of Idaho, either through their elected representatives or through the initiative process.

68.    Further, the defenses of necessity, duress, and self-defense are affirmative defenses to an otherwise criminal act. Affirmative defenses are not elements of a criminal act that a state is required to prove or disprove in a criminal conviction beyond a reasonable doubt. *Patterson v. New York*, 432 U.S. 197, 210 (1977) (holding state has no due process obligation to disprove every affirmative defense), thus their existence does not shed light on whether the state may criminalize the underlying conduct.

69.    In other words, as an example, even though the common law has long recognized a right to self-defense as a defense or justification to a criminal murder charge, the existence of that common law affirmative defense does not create a constitutional right to homicide. Similarly, as but an example to illustrate the point, while a necessity defense may, in some circumstances, justify setting a fire in a national forest when it would otherwise be illegal,

it does not provide a constitutional right to set fire to the national forest. *See generally United States v. Powers*, 129 F.4th 617 (9th Cir. 2025).

70. Idaho's defense of self and defense of others affirmative defenses are not elements of the crime of unlawful abortion, and are properly considered when raised by an individual criminal defendant. *Compare* Idaho Code §§ 18-622, 18-8804 with Idaho Code §§ 18-4009 (justifiable homicide), §§ 19-201 – 19-203 (defense of self and others). The Constitution does not require a criminal statute to include, with its elements, the obligation to disprove any affirmative defense that is not an element of the crime. *See Martin v. Ohio*, 480 U.S. 228, 233–34 (1987).

71. And even if such rights could encompass medical interventions, "the States have always diverged on how exactly to implement this interest, so there is wide variety across the Nation in the types and amounts of force that may be used, the necessity of retreat, the rights of aggressors, the availability of the 'castle doctrine' and so forth." *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 888 n.32 (2010) (Stevens, J., dissenting) (citing amici and Wayne R. LaFave, Substantive Criminal Law § 10.4 at 142–60 (2d ed. 2003)). That the States might include or exclude certain circumstances as justifiable does not violate any right to self-defense.

72. In fact, in Idaho, the right to self-defense is more stringent in terms of *mens rea* than Idaho's operative abortion statute. *Compare* Idaho Criminal Jury Instructions 1517–18 (operating on reasonable person standard) with Idaho Code § 18-622 (providing for good faith medical judgment of physician as standard).

73. Thus, the defenses of self-defense, duress, or necessity cannot provide a constitutional right to an abortion for purposes of protecting the pregnant woman's health.

74. There is no fundamental right to an abortion in circumstances where pregnancy-related complications jeopardize a pregnant woman's health.

75. There is no fundamental right to an abortion in circumstances where continuing a pregnancy would exacerbate a pregnant woman's underlying health condition or interfere with the pregnant woman's ability to obtain standard treatment for that condition.

76. There is no fundamental right to an abortion where continuing the pregnancy would put the pregnant woman at risk of death from self-harm.

77. There is no fundamental right to an abortion in circumstances in which the unborn child is diagnosed with a fatal or grave condition or miscarriage is inevitable.

78. There is no fundamental right to an abortion in circumstances in which a multifetal pregnancy reduction would increase the likelihood of survival of the remaining fetuses.

79. There is no fundamental right to a specific medical treatment "free of the lawful exercise of government police power." *Carnohan v. United States*, 616 F.2d 1120, 1122 (9th Cir.

1980); *accord Mitchell v. Clayton*, 995 F.2d 772, 775 (7th Cir. 1993) ("[M]ost federal courts have held that a patient does not have a constitutional right to obtain a particular type of treatment or to obtain treatment from a particular provider if the government has reasonably prohibited that type of treatment or provider.") (collecting cases).

### ii.    The Defense of Life Act and the Fetal Heartbeat Preborn Child Protection Act Satisfy Rational Basis Review.

80.    Because there is no fundamental right to an abortion for any of the circumstances in which the Plaintiff seeks declaratory and injunctive relief, Idaho's Defense of Life Act, Idaho Code § 18-622, and Fetal Heartbeat Preborn Child Protection Act, Idaho Code § 18-8805, are analyzed under rational basis review. *Dobbs*, 597 U.S. at 300.

81.    Under rational basis review, "courts cannot substitute their social and economic beliefs for the judgment of legislative bodies." *Dobbs*, 597 U.S. at 300.

82.    Idaho's Defense of Life Act and Fetal Heartbeat Preborn Child Protection Act are "entitled to a strong presumption of validity." *Dobbs*, 597 U.S. at 301 (cleaned up). They "must be sustained if there is a rational basis on which the legislature could have thought [they] would serve legitimate state interests." *Id.*

83.    The State of Idaho has at least a legitimate state interest in the "respect for and preservation of prenatal life at all stages of development." *Dobbs*, 597 U.S. at 301.

84.    The State of Idaho has at least a legitimate state interest in "the protection of maternal health and safety." *Dobbs*, 597 U.S. at 301.

85.    The State of Idaho has at least a legitimate state interest in "the elimination of particularly gruesome or barbaric medical procedures." *Dobbs*, 597 U.S. at 301.

86.    The State of Idaho has at least a legitimate state interest in "the preservation of the integrity of the medical profession." *Dobbs*, 597 U.S. at 301.

87.    The State of Idaho has at least a legitimate state interest in "the mitigation of fetal pain." *Dobbs*, 597 U.S. at 301.

88.    The State of Idaho has at least a legitimate state interest in "the prevention of discrimination on the basis of … disability." *Dobbs*, 597 U.S. at 301.

89.    Every completed abortion results in the death of the unborn child.

90.    Every completed abortion "terminates life." *Dobbs*, 597 U.S. at 290 (quoting *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 852 (1992)).

91.    Idaho Code § 18-622's prohibition on performing an abortion except when necessary to prevent the death of the mother is rationally related to the state's legitimate interest in

preserving prenatal life at all stages of development. The only way to preserve prenatal life is to prevent the killing of prenatal life.

92. The Fetal Heartbeat Preborn Child Protection Act's prohibition on performing an abortion on a pregnant woman when a fetal heartbeat has been detected is rationally related to the state's legitimate interest in preserving prenatal life at all stages of development.

93. Given the risks to the health and the life of the pregnant mother from an abortion, Idaho Code § 18-622's prohibition on performing an abortion except when necessary to prevent the death of the mother is rationally related to the state's legitimate interest in protecting maternal health and safety. The question of whether an abortion is safer than continuing a pregnancy is not before this Court. Rather, the Court must only determine whether the prohibition on performing abortions is rationally related to the state's legitimate interest, and the Court is prohibited from substituting its beliefs for the judgment of the legislature. The facts are undisputed that there are risks to maternal health and safety from an abortion procedure, from both a medication abortion and a surgical abortion. It is rational for the state to prohibit abortions to reduce or eliminate the risks to maternal health and safety from an abortion procedure.

94. Likewise, the Fetal Heartbeat Preborn Child Protection Act's prohibition on performing an abortion on a pregnant woman when a fetal heartbeat has been detected is rationally related to the state's legitimate interest in protecting maternal health and safety.

95. Idaho Code § 18-622's prohibition on performing an abortion except when necessary to prevent the death of the mother and, when an abortion is allowed, requiring it to be performed in a manner that provides the best opportunity for the unborn child to survive, is rationally related to the state's legitimate interest in the elimination of particularly gruesome or barbaric medical procedures. Several surgical abortion procedures, such as the Dilation and Evacuation (D&E), are gruesome and barbaric medical procedures. As described by the U.S. Supreme Court and the expert witnesses in this case, a D&E involves the physician tearing the unborn child apart and removing the body parts piece by piece until the child has been completely dismembered and removed. *Gonzales v. Carhart*, 550 U.S. 124, 135–36 (2007). A physician must then crush the skull of the unborn child to remove it from the uterus. Tearing an unborn child apart limb by limb is gruesome and barbaric, and prohibiting that abortion method except when that method lessens the risk of death to the pregnant woman is rationally related to the state's legitimate interests.

96. Likewise, the Fetal Heartbeat Preborn Child Protection Act's prohibition on performing an abortion on a pregnant woman when a fetal heartbeat has been detected is rationally related to the state's legitimate interest in eliminating barbaric and gruesome medical procedures.

97. Idaho Code § 18-622's prohibition on performing an abortion except when necessary to prevent the death of the mother is rationally related to the state's legitimate interest in preserving the integrity of the medical profession. When treating a pregnant woman, all doctors have two (or more) patients—the pregnant woman and her unborn child(ren). Physicians are called upon to provide care to all of their patients, including unborn children.

Prohibiting physicians from intentionally terminating the life of one of the physician's patients except when necessary to prevent the death of the pregnant woman is rationally related to the state's interest in preserving the integrity of the medical profession.

98.    Likewise, the Fetal Heartbeat Preborn Child Protection Act's prohibition on performing an abortion on a pregnant woman when a fetal heartbeat has been detected is rationally related to the state's legitimate interest in preserving the integrity of the medical profession.

99.    Idaho Code § 18-622's prohibition on performing an abortion except when necessary to prevent the death of the mother is rationally related to the state's legitimate interest in the mitigation of fetal pain. Preventing a physician from tearing an unborn child apart or from intentionally terminating the life of an unborn child is rationally related to mitigating fetal pain.

100.    Likewise, the Fetal Heartbeat Preborn Child Protection Act's prohibition on performing an abortion on a pregnant woman when a fetal heartbeat has been detected is rationally related to the state's legitimate interest in mitigating fetal pain.

101.    Idaho Code § 18-622's prohibition on performing an abortion except when necessary to prevent the death of the mother is rationally related to the state's legitimate interest in preventing discrimination on the basis of disability. To allow abortions for no other reason except for the fact that the unborn child has a diagnosis that might limit the length of its life, or result in certain disabilities after it is born, as requested by the Plaintiff, would be to allow physicians and others to discriminate on the basis of disability. Prohibiting abortions except when necessary to prevent the death of the mother is rationally related to the state's legitimate interest in preventing that type of discrimination.

102.    Likewise, the Fetal Heartbeat Preborn Child Protection Act's prohibition on performing an abortion on a pregnant woman when a fetal heartbeat has been detected is rationally related to the state's legitimate interest in preventing discrimination on the basis of disability.

103.    To the extent that the Plaintiff, or the Court, believes that there are some circumstances in which the prohibitions on performing abortions under the Defense of Life Act or the Fetal Heartbeat Preborn Child Protection Act might not advance the state's legitimate interests as described above, that is irrelevant under rational basis review. The "rational basis standard does not require that the [state] choose the best means of advancing its goals," and it does not require an "exact fit for the interest at issue." *United States v. Navarro*, 800 F.3d 1104, 1114 (9th Cir. 2015) (citations and quotations omitted) (cleaned up). It is sufficient that there is a "rational connection between the rule and the governmental interest." *Id.* (internal quotations and citation omitted). As described above, there is a rational connection between the state's interests and the prohibition on abortions.

### iii. Even if subject to strict scrutiny, the Defense of Life Act and Preborn Child Protection Act Satisfy strict scrutiny.

104. While there is no fundamental right to abortion in the circumstances described by the Plaintiff, as discussed above, Idaho's Defense of Life Act and Fetal Heartbeat Preborn Child Protection Act nevertheless satisfy strict scrutiny.

105. Where a fundamental right is involved, government infringement of that right is allowed if the law is "narrowly tailored to serve a compelling state interest." *Reno*, 507 U.S. at 302.

106. Idaho has a compelling interest in "protecting unborn life." *Satanic Temple v. Labrador*, 716 F. Supp. 3d 989, 1005 (D. Idaho 2024), *aff'd and remanded on different grounds* 149 F.4th 1047 (9th Cir. 2025); Idaho Code § 18-601; *see Webster v. Reproductive Health Servs.*, 492 U.S. 490, 519 (1989) (op. of Rehnquist, C.J., Kennedy, J. and White, J.); *cf. Dobbs*, 597 U.S. at 301.

107. The only way to protect unborn life is to prevent the termination of unborn life, and thus the Defense of Life Act and the Fetal Heartbeat Preborn Child Protection Act are narrowly tailored to protect unborn life. Indeed, the District of Idaho has already found that Idaho's Defense of Life Act and Fetal Heartbeat Preborn Child Protection Act are "narrowly tailored to Idaho's compelling interests in protecting unborn life." *Satanic Temple*, 716 F. Supp. 3d at 1005.

108. Further, states have a "compelling interest in eradicating discrimination." *Roberts v. Jaycees*, 468 U.S. 609, 623 (1984).

109. Prohibiting abortion in cases in which the unborn child might have a disability is narrowly tailored to serve the state's compelling governmental interest in eradicating discrimination against unborn children with disabilities.

### B. Count 2 – Equal Protection Claim

### i. Idaho's Defense of Life Act and Fetal Heartbeat Preborn Child Protection Act do not violate Equal Protection.

110. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *Gallinger v. Becerra*, 898 F.3d 1012, 1016 (9th Cir. 2018) (cleaned up). The Court's equal protection analysis consists of three steps: (1) identify the classification, (2) identify a control group of individuals similarly situated in relevant respects, and (3) if the two groups are similarly situated, identify and apply the appropriate level of scrutiny. *Id.*

111. In this case, Plaintiff claims that the applicable classification is pregnant women "at risk of death from self-harm" and that the control group is pregnant women "at risk of death from all other causes."

112.    However, the Idaho Supreme Court in its authoritative interpretation of the Defense of Life Act and the Fetal Heartbeat Preborn Child Protection Act held that the "only classification these laws create is between medical providers who perform or assist in abortions and medical providers who do not." *Planned Parenthood Great Northwest v. State*, 171 Idaho 374, 442, 522 P.3d 1132, 1200 (2023). Thus, the Plaintiff's classification is not supported by the law and the interpretation of the law set forth by the Idaho Supreme Court.

113.    Even if the statute creates the classification urged by the Plaintiff, the two proposed groups are not similarly situated. An abortion is never necessary treatment to protect a pregnant woman from self-harm. There is a plethora of other treatment options for women at risk of death from self-harm including, if everything else fails, in-patient hospitalization to prevent the woman from harming herself until she is able to give birth. Additionally, properly diagnosing whether a pregnant woman is at risk of death from self-harm is substantially different from diagnosing pregnant women who are facing a physical ailment and in which an abortion is necessary to prevent her death. Among other reasons, a pregnant woman can lie about her mental health and her risk of death from self-harm related to her pregnancy.

114.    Many effective ways exist to protect pregnant women from self-harm, including medication, cognitive behavioral therapy, dialectical behavioral therapy, electroconvulsive therapy, transcranial magnetic stimulation, light box therapy, and hospitalization.

115.    Even if the two groups are similarly situated, the Court must then determine the appropriate level of scrutiny to apply. The Court applies rational basis if neither a suspect class nor a fundamental right is involved. *Gallinger*, 898 F.3d at 1016.

116.    Mental illness is not a suspect or quasi-suspect classification. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 445–46 (1985).

117.    Neither the history nor the text of the Defense of Life Act or Fetal Heartbeat Preborn Child Protection Act shows any disdain, hostility, or animus towards women with mental illness.

118.    "[B]ecause abortion is not a fundamental right, and no suspect class is at play," Idaho's abortion regulations are not subject to heightened scrutiny. *Raidoo*, 75 F.4th at 1125.

119.    For the same reasons discussed above, Idaho's Defense of Life Act and Fetal Heartbeat Preborn Child Protection Act survive rational basis review.

120.    Also, for the same reasons discussed above, even if the laws were subject to heightened review, the laws survive strict scrutiny because they are narrowly tailored to serve compelling governmental interests.

DATED: May 11, 2026

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL


/s/ *Aaron M. Green*
AARON M. GREEN
Deputy Attorney General

*Attorney for Defendants Members*
*of the Idaho Board of Medicine,*
*and Intervenor Attorney General*
*Raúl Labrador*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT on May 11, 2026, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Jamila Johnson
jjohnson@lawyeringproject.org

Tanya Pellegrini
tpellegrini@lawyeringproject.org

Paige Suelzle
psuelzle@lawyeringproject.org

Stephanie Toti
stoti@lawyeringproject.org

Wendy S. Heipt
wheipt@legalvoice.org

Ronelle Tshiela
Rtshiela@lawyeringproject.org

Joy Williams
jwilliams@lawyeringproject.org

Kelly O'Neill
koneill@legalvoice.org

*Attorneys for Plaintiff*

Dayton Reed
dreed@adacounty.id.gov
civilpafiles@adacounty.id.gov

*Attorney for Ada County
Prosecuting Attorney*

/s/*Aaron M. Green*
AARON M. GREEN