RAÚL R. LABRADOR
ATTORNEY GENERAL

YVONNE DUNBAR, ISB #7200
Chief Counsel

JAMES E. M. CRAIG, ISB #6365
Chief, Civil Litigation and
Constitutional Defense
AARON M. GREEN, ISB #12397
Assistant Solicitor General
KYLE D. GRIGSBY, ISB #10709
Deputy Attorney General
Office of the Attorney General
P.O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
james.craig@ag.idaho.gov
aaron.green@ag.idaho.gov
kyle.grigsby@ag.idaho.gov

*Attorneys for Defendants Members of the Idaho Board of Medicine, and Intervenor Attorney General Raúl Labrador*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| STACY SEYB, M.D.<br><br>*Plaintiff*,<br><br>v.<br><br>MEMBERS OF THE IDAHO BOARD OF MEDICINE, in their official capacities; *et al.*,<br><br>*Defendants*. | Case No. 1:24-cv-00244-BLW<br><br>**MEMORANDUM IN SUPPORT OF ATTORNEY GENERAL RAÚL LABRADOR'S EMERGENCY MOTION TO STAY INJUNCTION PENDING APPEAL** |

## INTRODUCTION

This Court's opinion is the first in the nation to declare a new federal constitutional right to abortion based on a risk to health or threats of suicide. Because the Attorney General is likely to succeed on the merits of any appeal, and because the opinion improperly issued a universal injunction granting relief well beyond the parties, the Court should stay its decision pending appeal. The State's interest in protecting unborn children from unjustified abortion is irreparably harmed by the order, and public interest and equity support a stay for that same reason.

Out of respect for the lives of unborn children in these circumstances—and recognition that the opinion blazed a new trail in substantive due process—the Court should stay its injunction pending resolution of the forthcoming Ninth Circuit appeal and any Supreme Court appeal. The Attorney General requests the Court decide this motion as soon as possible and no later than August 25, 2026, to allow him to seek relief from the Ninth Circuit if necessary and continue protecting Idaho's children and their mothers.[1]

## BACKGROUND

On May 24, 2024, Plaintiff Stacy Seyb, M.D., a physician and Maternal Fetal Medicine Specialist employed by St. Luke's Health System, brought a challenge to the State of Idaho's medical regulations concerning abortion. The Defense of Life Act[2] prohibits abortions as defined by Idaho Code § 18-604 except, as relevant here, when necessary in a physician's good-faith medical judgment to prevent the death of the mother. *See* Idaho Code § 18-622.

[1] Plaintiff's counsel was contacted and opposes the stay request.

[2] While the Amended Complaint, *see* Dkt. 56 ¶¶ 127–28, also challenged the Fetal Heartbeat Preborn Child Protection Act, Idaho Code § 18-8801 et. seq., the Court found it "not necessary to separately analyze this statute because all abortions that it prohibits also fall under the Defense of Life Act." Dkt. 87 n.1; *see also* Idaho Code § 18-8805(4).

The Idaho Supreme Court clarified the scope of the life-of-the-mother exception in *Planned Parenthood Great Northwest v. State*, 171 Idaho 374, 522 P.3d 1132 (Idaho 2023). The state court held that application of the exception is rooted in the physician's "good faith medical judgment" about the necessity of the abortion. *Id.* at 445, 522 P.3d at 1203. Thus, "the statute does not require *objective* certainty, or a particular level of immediacy" and "there is no 'certain percent chance' requirement that death will occur under the term 'necessary.'" *Id.* at 445–46, 522 P.3d at 1203–04.

Despite admitting no knowledge[3] or training[4] on the law and having never been criminally charged or disciplined for performing an illegal abortion,[5] Plaintiff filed suit against the members of the Idaho Board of Medicine and the prosecuting attorneys of every county in Idaho, asserting third-party standing on behalf of pregnant women. Plaintiff sought declaratory and injunctive relief under two causes of action, both styled as as-applied challenges to Idaho's abortion statutes. Count 1 is a substantive due process claim, based on pregnant women's purported fundamental right to an abortion. Dkt. 56 at 22–24. Count 2 is an equal protection claim, also asserted on behalf of pregnant women, based on the statute's prohibition of using a risk of death by self-harm to determine that an abortion is necessary to prevent the death of the mother. *Id.* at 24. The Court granted dismissal as to all but the Ada County Prosecutor and the Members of the Idaho Board of Medicine, Dkt. 54, and granted the Idaho Attorney General's Motion to Intervene, Dkt. 66.

---

[3] Ex. 2010 at 53:15-23, 75:8-76:1 (Plaintiff did not know that the Idaho Defense of Life Act did not require "a particular level of immediacy" under the life-of-the-mother exception); *Id.* at 76:2-76:22 (Plaintiff did not know that the Idaho Defense of Life Act did "not require *objective* certainty" that a mother's life is at risk under the life-of-the-mother exception); *Id.* at 53:1-11; Tr. 156:16-19, 156:24-157:2 (Plaintiff incorrectly believed that an abortion was permitted only when a woman was in a very unstable condition and when death was "inevitable" without that abortion); Tr. 157:21-158:7; 162:9-18 (Plaintiff maintaining at trial that he still does not know the law).

[4] Tr. 159:18-161:18.

[5] Ex. 2010 at 43:1-6; Tr 147-48.

The Court held a bench trial from June 8, 2026 through June 15, 2026, on the history and tradition of exceptions to statutes protecting unborn life. Dkts. 95; 110. The Court issued its Findings of Fact, Conclusions of Law, and Order on August 13, 2026. Dkt. 147. The opinion declared two new, purported constitutional rights to abortion in cases "where a physician has determined, in his or her good faith medical judgment, that continuation of the pregnancy poses a non-negligible risk of serious and lasting harm to the health of the pregnant woman" and where the same would be true in any case "that abortion is necessary to prevent a non-negligible risk that continuation of the pregnancy will result in the death of the pregnant woman from self-harm." Contrary to binding Supreme Court precedent, the opinion did not limit the injunction's scope to abortions performed by Dr. Seyb.

## LEGAL STANDARD

A party may request a stay of a district court's judgment, order, and injunction pending appeal. Fed. R. Civ. P. 62(d); Fed. R. App. P. 8. The party seeking relief must move first in the district court for an injunction before seeking relief from the court of appeals, Fed. R. App. P. 8(a)(l), unless the party seeking relief shows that "moving first in the district court would be impracticable." Fed. R. App. P. 8(a)(2)(A)(i).

In deciding to issue a stay, courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

"The Ninth Circuit applies a 'sliding scale' approach ... 'where the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor.'" *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1177 (9th Cir. 2021) (quoting *All. For the Wild Rockies v. Cotrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)) (alteration in original). When the government is a party, the last two factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken*, 556 U.S. at 435).

## I. The Attorney General is likely to succeed on the merits of the appeal.

The Court should stay the injunction because the Ninth Circuit is likely to reverse the opinion's holding that there is a substantive-due-process or equal-protection right to an abortion. *Little v. Reclaim Idaho*, 591 U.S. 1060, 1063 (2020) (Roberts, C.J., concurring) (staying this Court's "transformative and intrusive" injunction). The opinion's legislative (rather than adjudicative) findings that go to the constitutionality of a state statute will not receive any deference from appellate courts. *Nathan v. Alamo Heights Indep. Sch. Dist.*, 173 F.4th 576, 607-8 & n.57 (5th Cir. 2026) (citing *e.g. Moore v. Madigan*, 702 F.3d 933, 942 (7th Cir. 2012)). The opinion erred in declaring a new right contrary to *Dobbs* and history and enjoining Idaho from enforcing its law against nonparties.

### A. The opinion erred by declaring two new constitutional rights to abortion.

The opinion is exceedingly likely to be reversed in at least three key areas with respect to both newly created rights to abortion, and so the Court should stay its decision. First, *Dobbs* controls. Second, the opinion failed to carefully define the asserted rights. Third, history does not establish either right. The "inevitably ambiguous," Dkt. 147 at 57, nature of history and the opinion's discovery of a novel constitutional right show—at the very least—serious questions on the merits, which warrants a stay under the sliding scale approach.

### 1. *The opinion violated the clear directive of the Supreme Court in* Dobbs *to apply rational-basis review to laws regulating abortion.*

The opinion declared a novel constitutional right to abortion in two respects, then subjected Idaho's laws to strict scrutiny to the extent they contravened the newly minted rights. This violated the holding of the Supreme Court in *Dobbs* that there is no constitutional right to abortion. 597 U.S. 231. "The Constitution makes no reference to abortion, and no such right is implicitly protected by any constitutional provision." *Id.* Instead, in overruling *Roe* and *Casey*, the Supreme Court "return[ed] that authority to the people and their elected representatives." 597 U.S. at 302. The Supreme Court did *not* limit its holding to pre-viability elective abortions; as Chief Justice Roberts recognized, the *Dobbs* court went further than strictly necessary to decide the question presented. 597 U.S. at 347–48 (Roberts, C.J., concurring in the judgment). The opinion returns Idaho to the *Roe* era in direct contradiction to the Supreme Court's binding precedent. In doing so, it has re-arrogated the power to regulate abortion to the judiciary by adding limits on the people's right to make the health and safety judgments that legislatures routinely make. As the opinion correctly acknowledged in the context of fetal complications, "[f]or Idahoans who oppose this law, the solution lies at the ballot box rather than the courthouse." Dkt. 147 at 80. The opinion is wrong, and because that opinion will likely be reversed, the Court should grant a stay.

Indeed, a constitutional health exception to a law otherwise regulated under rational basis makes no sense under the premise of rational-basis review. Legislatures can make contested judgments about *health* that are based even in "rational speculation." *F.C.C. v. Beach Comms., Inc.*, 508 U.S. 307, 315 (1993); *Dobbs*, 597 U.S. at 301. Regulation of abortion, including in cases where health or self-harm are at issue, rests on judgments about what best serves public health, and Idaho is entitled to consider the profound interest that an unborn child has in his or her own life in striking the balance. But the opinion has constitutionalized this balancing, rejected the

Legislature's protection of unborn life, and applied a heightened standard of review. Dkt. 147 at 72. Still worse, the opinion ignored Idaho's profound interest in protecting the lives of unborn children and failed to even grapple with the narrow tailoring analysis related to Idaho's interest in protecting unborn life. *See* Dkt. 147 at 73–74 (discussing narrow tailoring relating to the state's interests in protecting maternal health, maintaining the integrity of the medical practice, preventing sex-based discrimination, mitigating fetal pain, and eliminating gruesome and barbaric medical procedures, but not with the State's ultimate interest in protecting the lives of unborn children).

In short, the opinion has constitutionalized a judgment where deference to the legislature should be at its zenith. The opinion's constitutionalizing of exceptions to a health and safety regulation is contrary to binding case law.

It is neither "disingenuous" nor "facile" to ask a lower court to apply the on-point, binding holding of the Supreme Court in *Dobbs*—abortion regulations are subject only to rational basis review under the Fourteenth Amendment. *Compare* Dkt. 147 at 42 *with Dobbs*, 597 U.S. at 301. While "[l]ower court judges may sometimes disagree with [the Supreme Court's] decisions, [] they are never free to defy them." *N.I.H. v. Am. Public Health Ass'n*, 606 U.S. ____, 145 S.Ct. 2658 (Mem) (Gorsuch & Kavanaugh JJ., concurring in part and dissenting in part). Other courts, such as the Ninth and Eleventh Circuits, have accordingly held that all abortion regulations are subject to rational basis review, full stop. *Raidoo v. Moylan*, 75 F.4th 1115, (9th Cir. 2023) ("[A]n abortion-related law must only survive rational basis review."); *SisterSong Women of Color Reproductive Justice Coll. v. Gov. of Georgia*, 40 F.4th 1320, 1326 (11th Cir. 2022).[6] Whatever policy

[6] "*Dobbs* clearly holds that a supposed right to abortion is not protected by any constitutional provision and the only constitutional scrutiny to which abortion regulations are subject is rational-basis review. [citing *Dobbs*] To the extent that previous decisions of [the Eleventh Circuit] apply any heightened review or state that any provision of the Constitution protects a right to abortion, *Dobbs* abrogated those decisions." *Sistersong*, 40 F.4th at 1326.

disagreement there may be on the issue of abortion, *see e.g.* Dkt. 147 at 4–6, 72, 76–77, 79, such disagreements are not sufficient reason to depart from a holding of the Supreme Court—let alone a holding that has been clear enough to circuit courts. Whatever "difficult questions" the judiciary thinks it can answer better than the Idaho Legislature, Dkt. 147 at 42, the prerogative to answer questions about abortion has been returned "to the people and their elected representatives." *Dobbs*, 597 U.S. at 302. Because the opinion usurped that authority, it is likely that the Court will be reversed, and so a stay should be granted.

***2. The opinion erred by articulating the rights at issue at a high level of generality.***

While recognizing that the Supreme Court and Ninth Circuit require a careful description of the asserted right at issue, neither right the opinion declared passes that test. *See Reach Cmty. Dev. v. U.S. Dep't of Homeland Sec.*, 174 F.4th 1143, 1148 (9th Cir. 2026). While disclaiming recognition of a right to abortion "whenever recommended by a doctor," the opinion grants doctors vast and unfettered discretion in determining just how far this "constitutional" right extends. Dkt. 147 at 41. The standard varies throughout the opinion's discussion. Is it as specific as the conditions identified by the decision—hysterectomies, nerve damage, and the like? *Id.* Perhaps. But the opinion refused to provide an "exhaustive" list of conditions warranting abortion. Dkt. 147 at 17. Is it anything that is not a typical risk? Perhaps. But the opinion even indicates that the risk of commonly performed cesarean sections could allow for abortion based on potential permanent damage from a "risk of infection." Dkt. 147 at 49. What exactly is serious *enough* and lasting *enough* to qualify? The opinion does not say, but instead trusts doctors being paid to perform abortions to flesh it out. *But see United States v. Skrmetti*, 605 U.S. 495, 530–31 (Thomas, J. concurring) ("The views of self-proclaimed experts do not 'shed light on the meaning of the Constitution.'") (quoting *Dobbs*, 597 U.S. at 272–73).

The mental-health exception is even more untethered from a coherent standard. The opinion made no attempt to narrowly define the right at issue apparently because, in its view, it is simply an application of the broader right it found to a health-preserving abortion. Dkt. 147 at 74–75. But this illustrates the problem with the health exception. A health exception that is broad enough to cover mental-health conditions during pregnancy is not rooted anywhere in the historical record (certainly not any that the opinion recounts)—and *in spite of* clear commentary from historical sources that such abortions *were expressly not* considered justified.

Moreover, the opinion did not limit its injunction to conditions for which it thought doctors could "objectively evaluate the risk of suicide." Dkt. 147 at 19. The injunction has no requirement that the physician try other effective treatments, like medication changes, electroconvulsive therapy, and hospitalization, that don't require abortion, nor even to consult a mental-health expert or to require that the pregnant woman receive a mental-health diagnosis. Dkt.147 at 20. Nor does the physician have to determine the woman's threats to be credible. Ultimately, the opinion's delegation of constitutional authority to abortion doctors who are supposed to determine when a pregnant woman's threat of suicide is sufficiently genuine is no standard at all.[7]

***3. The opinion erred in its history and tradition analysis.***

The opinion also applied the history-and-tradition analysis in ways that directly contravene the Supreme Court's reasoning and method of determining the relevant history and tradition. Without rehashing every error, a few key flaws stand out.

---

[7] This is, as the Attorney General has previously pointed out, exactly the regime in place in the United Kingdom, where nearly a quarter-million abortions are performed annually, ostensibly for mental health reasons. Dkt. 144 at 31. Ironically, even the California Supreme Court recognized the inevitable result of such an exception in *People v. Belous*, 458 P.2d 194, 204 (Cal. 1969) ("Such a construction of the statute permitting voluntary abortions [based on the "possibility of suicide"] would render the statute virtually meaningless.")

As in *Dobbs*, the opinion—despite canvassing the common law—has found "no common-law case or authority, and the parties have not pointed to any, that remotely suggests a positive *right* to procure an abortion at any stage of pregnancy." 597 U.S. at 245. The best the opinion could do was analogize from exceptions to liability for medical practice while ignoring what *Dobbs* noted: authorities like "Hale and Blackstone treated abortionists differently from *other* physicians or surgeons who caused the death of a patient." 597 U.S. at 245. What the opinion has exhaustively catalogued is that the vast majority of the laws enacted at the time of the 14th Amendment's ratification contain *only* a life exception in their text, not a health exception.[8] The opinion does not explain how the state statutes themselves, the "most important" authorities at issue, 597 U.S. at 272, show anything different than what the *Dobbs* court observed—that when states enacted varying regimes of abortion regulation, they had the freedom to draw the line between permissible and impermissible abortions. For example, Illinois repealed the health exception the opinion expressly cites (Dkt. 147 at 48) merely two years later (Dkt. 144 at 12) and "no one, as far as we are aware, argued that the law[ ] [Illinois] enacted violated a fundamental right." *Dobbs*, 597 U.S. at 252.

The opinion summarily concludes that "no matter the details of the statutory language," "life" included "health." Dkt. 147 at 54–55. But the cases cited in the opinion don't remotely say that—in fact the opinion *quotes* many of these cases addressing life concerns while inexplicably maintaining that they somehow blend together health and life. *See generally* Dkt. 147 at 53–55

[8] As for primary sources, the opinion takes the approach that Plaintiffs did in this case, cherry picking quotes emphasizing the role of a doctor while ignoring that life threatening context for such cases in the Nineteenth Century. Dkt. 147 at 59–60. Indeed, to take a surprising example, the opinion repeats one of the more egregious errors committed by Plaintiff by adopting Plaintiff's selective summarizing of Dr. Bedford's case, Tr. 947–50, and his disingenuous omission of the extreme mortal peril of the woman described by Dr. Bedford, Tr. 1038–40. Dkt, 147 at 59–60.

(quoting *Gunder v. Tibbitts*, 55 N.E. 762, 766 (Ind. 1899) ("Why did he represent to her that an operation was necessary to save her life?"); *State v. Aiken*, 80 N.W. 1073, 1074 (Iowa 1899) ("this does not prove beyond a reasonable doubt that the miscarriage was not necessary to save the life of the mother"); *State v. Powers*, 283 P. 439, 440 (Wash. 1929) ("then it cannot be said that the operation was not necessary to preserve the life of the patient")). The cited but not quoted cases also don't support reading "health" into "life." The opinion's description of *State v. De Groat* is simply incorrect. The Missouri Supreme Court did not say that "any evidence" of poor health would negate an abortion prosecution, only that the State bore the burden (and failed) to show "antecedent good health" to "negative the nonnecessity" of the abortion as required by criminal law in Missouri. 168 S.W. 702, 708 (Mo. 1914). And the opinion's description of *Meek* is incomplete—it is not that *any* physician's advice could negate an indictment for abortion, but only advice that it was necessary *to save her life. State v. Meek*, 70 Mo. 355, 357 (1879). Citing cases and suggesting that they meant something other than what they explicitly said is likely to fail on de novo review.[9]

Nor did the opinion establish any historical basis for mental-health abortions. State statutes allowing for life-preserving abortions were not understood as allowing abortions because a woman might commit suicide. Tr. 829 (Professor Dellapenna testifying he was not aware of any mental health exception before the 20th century). That makes sense because "for over 700 years, the

[9] The opinion's discussion of 20th Century cases is similarly deficient. For instance, while the opinion says that the California Supreme Court did not find that the challenged abortion statute in *People v. Belous* could not be extended to cover health, Dkt. 147 at 57, that is what it said. Comparing the challenged statute to a recent amendment, the California Supreme Court said, "The language of the statute, 'unless the same is necessary to preserve her life,' does not suggest a relative safety test [between abortion and childbirth], and no case interpreting the statute has suggested that the statute be so construed." 458 P.2d at 205. The *Belous* court certainly didn't *adopt* the possible reading the Court discussed.

Anglo–American common-law tradition has punished or otherwise disapproved of [] suicide." *Washington v. Glucksberg*, 521 U.S. 702, 711 (1997). The Fourteenth Amendment could not have elevated a patient's threat to commit an act broadly viewed as "a grave public wrong" to a justification for a physician to perform a procedure that was also broadly viewed as wrongful. *Id.* at 714. Naturally, Plaintiff's expert was unaware of *any* abortions to prevent suicide occurring before 1900. Tr. 590–91. The opinion didn't cite any contemporaneous case affirmatively holding a right to a mental health abortion. And it downplayed or ignored entirely cases indicating such abortions violated the law. *Hatchard v. State*, 48 N.W. 380, 382 (Wis. 1891); *Austin v. State*, 194 S.W. 383, 383 (Tenn. 1917).[10]

* * *

Despite its incorrect application of the history-and-tradition analysis (and mostly ignoring the contrary historical evidence, *see generally* Dkt. 144 at 10–22), the opinion *still* ended up finding the history "ambiguous." Dkt. 147 at 57; *see also id.* at 46. As the Court acknowledges, "[f]or states with an express life-of-the-mother exception . . . there are no nineteenth- or early twentieth-century decisions explicitly discussing" the "status of health-preserving abortions." Dkt. 147 at 52. But *Dobbs* and the cases it relied on make clear "that a fundamental right must be 'objectively, deeply rooted in this Nation's history and tradition.'" *Dobbs*, 597 U.S. at 239 (quoting *Glucksberg*, 521 U.S. at 720–21 (1997). Ambiguous history is not remotely good enough to meet the high standard for taking the authority to protect innocent, unborn life out of the hands of the Legislature. History shows that legislatures and courts simply chose not to criminalize abortions

[10] The opinion's decision to short-cut the historical analysis on this point by finding a basic right to health and then expanding it to cover self-harm without further historical review further emphasizes that the opinion's history and tradition analysis is untethered to the required "carefully described" fundamental right for which the Court is supposed to search the record. *Dobbs*, 597 U.S. at 237–38.

to protect the life of the mother, and no such evidence exists for general health preserving abortions. And such efforts cannot be read to constitutionalize health-related abortions without reading words that are not there into those statutes and cases applying them. The opinion erred in relying on this history and usurping Legislative authority, and is likely to be reversed. The Court should therefore stay its injunction.

**B. The opinion erred by issuing a universal injunction.**

Compounding the flawed merits analysis, the opinion erred by ordering a universal injunction, and the opinion's resurrection of the universal injunction similarly warrants a stay pending appeal. This Court has previously been corrected by the Supreme Court for granting relief broader than necessary to remedy the injury brought by the complaining party. *Labrador v. Poe*, 144 S.Ct. 921, 923 (2024) (Gorsuch, J., concurring in grant of stay). Since that decision, the Supreme Court has again observed that injunctions which "prohibit enforcement of a law or policy against anyone . . . known as 'universal injunctions'— likely exceed the equitable authority that Congress has granted to federal courts." *Trump v. CASA, Inc.*, 606 U.S. 831, 837 (2025).

The injunction described in the opinion prohibits enforcement of Idaho's challenged laws against anyone, not merely Dr. Seyb, and so constitutes a universal injunction because it is broader than necessary to afford complete relief to the Plaintiff. *Id.* That is improper under binding Supreme Court precedent and again shows that the Attorney General is likely to succeed on appeal.

**II. The Attorney General will be irreparably injured absent a stay.**

As the opinion discussed, Dr. Seyb intends to perform the 10-20 abortions per year he previously did and *expand* his practice to cover mental-health abortions, Dkt. 147 at 29–30, 33–34. If true, that will inflict profound harm to the interests of the State represented by the Attorney General. Even in the abstract, "any time a state is enjoined by a court from effectuating statutes

enacted by representatives of its people, it suffers a form of irreparable injury." *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (quoting in parenthetical *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)). Here, the state interests are at a zenith: the Court has authorized the intentional taking of innocent, unborn human life in circumstances when the Idaho Legislature has forbidden it. *See Dobbs*, 597 U.S. at 301 (recognizing interest). That's the definition of irreparable harm; there's no way to bring back a baby after Dr. Seyb or another abortionist has taken that baby's life. *Louisiana by & through Murrill v. F.D.A.*, 175 F.4th 310, 321 (5th Cir. 2026) ("Once lost, that sovereign prerogative of protecting unborn life cannot be regained by legal remedy."). And this harm is imminent with Plaintiff's expanded practice.

**III. The issuance of the stay will not seriously injure the Plaintiff, and the public interest favors granting the stay.**

The last two factors for the Court to consider are whether issuance of the stay will substantially injure the other parties interested in the proceeding and where the public interest lies. *Nken*, 556 U.S. at 434 (citation omitted). As stated above, when the government is a party, the last two factors merge. *Drakes Bay*, 747 F.3d at 1092 (citation omitted). Here, again, the factors weigh in favor of a stay. Whatever Seyb's interest in performing abortion, the State's interest in protecting innocent human life is more compelling. During the more than two years he litigated this case, Seyb never moved for a preliminary injunction to protect his purported "right." In any event, he can continue to practice medicine as he's done since *Dobbs* and in light of Idaho courts' interpretations of its pro-life laws. Dkt. 147 at 32 (noting Plaintiff should have no need "to airlift patients to Utah"). Further, the fact that Seyb never requested a preliminary injunction undermines any claim Dr. Seyb might make of an alleged irreparable injury through a stay of the injunction. *Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015) (citing *Oakland Tribune, Inc. v. Chronicle*

*Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985) (noting a long delay or failure to seek emergency relief undercuts claims of irreparable harm).

Similarly, the public interest lies in effecting the protections of the unborn provided by the Legislature and thereby preventing the unjustified killing of unborn children. *Duncan v. Bonta*, 83 F.4th 803, 807 (9th Cir. 2023) (granting partial stay pending appeal and holding public "has a compelling interest in promoting public safety"). These factors support a stay.

**IV. The Attorney General requests the Court grant the stay by August 25, 2026.**

The Attorney General requests the Court grant the stay as soon as possible and, in any event, no later than Tuesday August 25, 2026, to preserve the State's interest in unborn life, which remains in jeopardy each day the Court's unlawful injunction is in place. The Attorney General plans to file an emergency request for relief with the Ninth Circuit Court of Appeals on Wednesday, August 26, 2026, absent a decision from this Court, or earlier should the Court issue a decision denying the request to stay the injunction before August 26.

## CONCLUSION

The Court should stay its injunction pending conclusion of all appeals, including to the Supreme Court, in this case.

DATED: August 18, 2026

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL

/s/ *Aaron M. Green*
AARON M. GREEN
Assistant Solicitor General

*Attorney for Defendants Members of the Idaho Board of Medicine and Intervenor Attorney General Raúl Labrador*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT on August 18, 2026, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

| | |
|---|---|
| Jamila Johnson<br>jjohnson@lawyeringproject.org | Tanya Pellegrini<br>tpellegrini@lawyeringproject.org |
| Paige Suelzle<br>psuelzle@lawyeringproject.org | Stephanie Toti<br>stoti@lawyeringproject.org |
| Wendy S. Heipt<br>wheipt@legalvoice.org | Ronelle Tshiela<br>Rtshiela@lawyeringproject.org |
| Joy Williams<br>jwilliams@lawyeringproject.org | Kelly O'Neill<br>koneill@legalvoice.org |
| William Mitchell<br>wmitchell@legalvoice.org | |

*Attorneys for Plaintiff*

Dayton Reed
dreed@adacounty.id.gov
civilpafiles@adacounty.id.gov

*Attorney for Ada County Prosecuting Attorney*

/s/ *Aaron M. Green*
AARON M. GREEN