William G. Mitchell
Idaho Bar No. 9662
LEGAL VOICE
1207 W. Sandcrest Ct.
Nampa, ID 83686
Phone: (208) 995-1451
wmitchell@legalvoice.org

Wendy S. Heipt*
LEGAL VOICE
907 Pine St., No. 500
Seattle, WA 98101
Phone: (206) 954-6798
wheipt@legalvoice.org

Jamila Johnson*
LAWYERING PROJECT
900 Camp St., 3rd Fl., No. 1197
New Orleans, LA 70130
Phone: (347) 706-4981
jjohnson@lawyeringproject.org

Tanya Pellegrini*
LAWYERING PROJECT
584 Castro St., No. 2062
San Francisco, CA 94114
Phone: (646) 480-8973
tpellegrini@lawyeringproject.org

Paige Suelzle*
LAWYERING PROJECT
300 Lenora St., No. 1147
Seattle, WA 98121
Phone: (347) 515-6073
psuelzle@lawyeringproject.org

Stephanie Toti*
LAWYERING PROJECT
41 Schermerhorn St., No. 1056
Brooklyn, NY 11201
Phone: (646) 490-1083
stoti@lawyeringproject.org

Ronelle Tshiela*
LAWYERING PROJECT
1525 S. Willow St., Unit 17, No. 1156
Manchester, NH 03103
Phone: (347) 429-9834
rtshiela@lawyeringproject.org

*Admitted *pro hac vice*

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| STACY SEYB, M.D.,<br><br>Plaintiff,<br><br>v.<br><br>MEMBERS OF THE IDAHO BOARD OF MEDICINE, in their official capacities; *et al*,<br><br>Defendants,<br><br>and<br><br>ATTORNEY GENERAL RAÚL LABRADOR,<br><br>Defendant-Intervenor. | Case No.: 1:24-cv-00244-BLW<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO ATTORNEY GENERAL RAÚL LABRADOR'S EMERGENCY MOTION FOR STAY OF INJUNCTION PENDING APPEAL [DKT. NO. 149]** |

Plaintiff respectfully submits this response in opposition to the Attorney General's motion for a stay of the injunction pending appeal [Dkt. No. 149]. In accordance with the Court's August 19, 2026, order [Dkt. No. 150], Plaintiff limits this response to addressing issues relating to the universal injunction argument raised in the Attorney General's motion.

**ARGUMENT**

"A stay is an 'intrusion into the ordinary processes of administration and judicial review,' and accordingly 'is not a matter of right, even if irreparable injury might otherwise result to the appellant.'" *Nken v. Holder*, 556 U.S. 418, 427 (2009) (citations omitted). "The party requesting a stay bears the burden of showing that the circumstances justify [its entry]." *Id.* at 433-34. Here, the Attorney General has failed to satisfy his burden of showing that the injunction entered by this Court is overbroad. The injunction binds only the Ada County Prosecuting Attorney and Attorney General of Idaho, who are both parties to this case, and it bars them from enforcing the challenged laws only in the limited circumstances in which such enforcement would violate the Constitution.

## I. The Injunctions at Issue in *CASA* Are Distinguishable From the Injunction Entered in This Case

The Attorney General's reliance on *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), is misplaced.[1] The injunctions at issue in that case are distinguishable from the one entered here in three critical ways: (1) they barred federal officials from applying a challenged Executive Order anywhere in the country under any circumstances; (2) they were preliminary; and (3) they relied on the authority granted to federal courts by the Judiciary Act of 1789. *Id.* at 839. Here, in

[1] The Attorney General's reliance on Justice Gorsuch's concurring opinion in *Labrador v. Poe*, 144 S. Ct. 921, 921 (2024) (Gorsuch, J., joined by Thomas & Alito, JJ., concurring in the grant of stay), is likewise misplaced. The concurrence does not have the force of law, and the majority did not offer any reasons for granting a partial stay of the injunction at issue. *Id.* at 921 (mem.).

contrast, the injunction bars Idaho officials from enforcing two Idaho statutes in limited circumstances; it is based on a final determination that certain specific applications of the statutes are unconstitutional; and it relies on the authority granted to federal courts by 42 U.S.C. § 1983.

First, although the opinion sometimes uses capacious language, *CASA*'s focus is plainly on broad injunctions that bar enforcement of federal laws nationwide. *See id.* at 840 ("By the end of the Biden administration, we had reached 'a state of affairs where almost every major presidential act [was] immediately frozen by a federal district court.'" (quoting W. Baude & S. Bray, *Proper Parties, Proper Relief*, 137 Harv. L. Rev. 153, 174 (2023)). The injunction entered here is narrow in scope and applies only to a subset of Idaho officials charged with enforcing two Idaho statutes. Findings of Fact, Conclusions of Law, and Order ("Posttrial Order") [Dkt. No. 147] at 80. Its geographic reach is necessarily limited to the State of Idaho; thus, it does not threaten to frustrate implementation of national policy based on the decision of a single district judge. Further, given that Idaho has only one federal judicial district, it is not the product of forum shopping.

Second, *CASA* focuses on preliminary injunctions, which are based on incomplete evidentiary records and a mere *likelihood* of success on the merits. *See CASA*, 606 U.S. at 870 (Kavanaugh, J., concurring) ("The Court's decision today focuses on the 'interim before the interim'—the preliminary relief that district courts can award (and courts of appeals can approve) for the generally *weeks-long* interim before this Court can assess and settle the matter for the often *years-long* interim before a final decision on the merits."). The injunction entered here followed the Court's final determination on the merits, after a six-day trial, that the challenged laws *are indeed* unconstitutional and therefore unenforceable in certain circumstances. *See* Trial Tr. vols. 1-6; Posttrial Order at 80.

Third, the preliminary injunctions at issue in *CASA* were based on the general grant of equitable jurisdiction to federal courts by the Judiciary Act of 1789. *See CASA*, 606 U.S. at 841. Accordingly, their propriety turned on whether they were sufficiently analogous to relief issued by the High Court of Chancery in England at the time of the adoption of the Constitution and the enactment of the original Judiciary Act. *Id.* at 841-42; *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 318 (1999). This Court's injunction is based on the authority granted to it by a later-enacted statute, Section 1983. *See* 42 U.S.C. § 1983 ("Every person who, under color of any statute … of any State … subjects … any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution … shall be liable to the party injured in [a] … suit in equity …."). Originally enacted in 1871, Section 1983 has a broad remedial purpose. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 685 (1978) ("Congress, in enacting [Section 1983], intended to give a broad remedy for violations of federally protected civil rights."); *Valenzuela v. City of Anaheim*, 6 F.4th 1098, 1102 (9th Cir. 2021) ("§ 1983 was meant to be a remedial statute and should be 'broadly construed' to provide a remedy 'against all forms of official violation of federally protected rights.'" (citations omitted)). Section 1983's goals include "deterrence to prevent future abuses of power." *Valenzuela*, 6 F.4th at 1102. *CASA*'s analysis of the scope of equitable jurisdiction created by the Judiciary Act of 1789 is therefore inapposite in a case brought under Section 1983.

The Attorney General has failed to demonstrate that the injunction entered in this case exceeds the authority that Section 1983 grants federal courts to remedy the deprivation of federal rights by state actors. Indeed, the scant two paragraphs his brief devotes to the topic of universal injunctions do not even address this critical issue. AG Mem. at 12.

## II. In Any Event, the Injunction Entered in This Case is No Broader Than Necessary to Grant Dr. Seyb Complete Relief

*CASA* partially stayed the preliminary injunctions at issue in that case "only to the extent that the injunctions [we]re broader than necessary to provide complete relief to each plaintiff with standing to sue." *CASA*, 606 U.S. at 861. Here, the injunction issued by this Court is no broader than necessary to grant Dr. Seyb and his patients complete relief. Dr. Seyb is a maternal-fetal medicine specialist who provides medical care to patients with high-risk pregnancies in a hospital setting, where he works alongside a team of other healthcare providers. *See* Trial Tr. vol. 1 at 105-07, 138-39; Ex. 2010 at 66-67; Posttrial Order at 23-24. He cannot provide life- and health-preserving abortions by himself, and if his colleagues faced criminal liability for assisting him with those procedures, he would be unable to provide them at all. Thus, enjoining enforcement of the challenged abortion bans only as to Dr. Seyb would not be sufficient to enable him to provide the constitutionally protected abortion care that he seeks to offer his patients. *Cf. Washington v. Trump*, 145 F.4th 1013, 1038 (9th Cir. 2025) (affirming entry of a universal injunction, following *CASA*, where necessary to afford complete relief to the plaintiffs) ("[T]he States would suffer the same irreparable harms under a geographically-limited injunction as they would without an injunction.").

## III. This Court Faithfully Adhered to the Principles Set Forth in *Ayotte*, Which Addresses the Proper Scope of Relief in a Section 1983 Case Concerning a State Abortion Statute That Lacks a Constitutionally Adequate Health Exception

In *Ayotte v. Planned Parenthood of Northern New England*, 546 U.S. 320 (2006), decided seven years after *Grupo Mexicano*, the Supreme Court provides guidance on the proper scope of relief in a Section 1983 action concerning a state abortion statute that lacks a

constitutionally adequate health exception.[2] "Generally speaking," the Supreme Court explains, "when confronting a constitutional flaw in a statute, we try to limit the solution to the problem." *Id.* at 328. "We prefer, for example, to enjoin only the unconstitutional applications of a statute while leaving other applications in force, or to sever its problematic portions while leaving the remainder intact." *Id.* at 328-29 (citations omitted).

The Supreme Court goes on to say that "[t]hree interrelated principles inform our approach to remedies." *Id.* at 329. "First, we try not to nullify more of a legislature's work than is necessary …." *Id.* "Second, mindful that our constitutional mandate and institutional competence are limited, we restrain ourselves from 'rewrit[ing] state law to conform it to constitutional requirements' even as we strive to salvage it." *Id.* "Third, … [a]fter finding an application or portion of a statute unconstitutional, we must next ask: Would the legislature have preferred what is left of its statute to no statute at all?" *Id.* at 330. With respect to the state abortion statute at issue, the Supreme Court concludes that "[o]nly a few applications … would present a constitutional problem." *Id.* at 331. "So long as they are faithful to legislative intent, then, in this case the lower courts can issue a declaratory judgment and an injunction prohibiting the statute's unconstitutional application." *Id.*

Notably, the Supreme Court's guidance focuses on crafting declaratory and injunctive relief that aligns with the unconstitutional *applications* or provisions of the challenged state law. That is precisely what the injunction entered in this case does. It bars certain Defendants from enforcing Idaho's abortion bans in specific circumstances that would violate the Constitution. *See* Posttrial Order at 80. Further, it preserves as much of the statutory language—as modified

---

[2] *Ayotte* is solely about remedies, and not about substantive constitutional law. *See generally Ayotte*, 546 U.S. at 326-32. Accordingly, it was not abrogated by *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022).

by a state court limiting construction—as it can in the process. *Id.* at 30-32, 80. Accordingly, the injunction is not overbroad.

**CONCLUSION**

The Court should deny the Attorney General's motion for a stay of the injunction pending appeal.

Dated: August 21, 2026

*/s/ Stephanie Toti*
Stephanie Toti*
LAWYERING PROJECT
41 Schermerhorn St., No. 1056
Brooklyn, NY 11201
Phone: (646) 490-1083
stoti@lawyeringproject.org

Jamila Johnson*
LAWYERING PROJECT
900 Camp St., 3rd Fl., No. 1197
New Orleans, LA 70130
Phone: (347) 706-4981
jjohnson@lawyeringproject.org

Tanya Pellegrini*
LAWYERING PROJECT
584 Castro St., No. 2062
San Francisco, CA 94114
Phone: (646) 480-8973
tpellegrini@lawyeringproject.org

Paige Suelzle*
LAWYERING PROJECT
300 Lenora St., No. 1147
Seattle, WA 98121
Phone: (347) 515-6073
psuelzle@lawyeringproject.org

Ronelle Tshiela*
LAWYERING PROJECT
1525 S. Willow St., Unit 17, No. 1156
Manchester, NH 03103
Phone: (347) 429-9834
rtshiela@lawyeringproject.org

**Admitted pro hac vice*

William G. Mitchell
Idaho Bar No. 9662
LEGAL VOICE
1207 W. Sandcrest Ct.
Nampa, ID 83686
Phone: (208) 995-1451
wmitchell@legalvoice.org

Wendy S. Heipt*
LEGAL VOICE
907 Pine Street, No. 500
Seattle, WA 98101
Phone: (206) 954-6798
wheipt@legalvoice.org

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that, on August 21, 2026, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will cause a copy to be served on all counsel of record.

*/s/ Stephanie Toti*
Stephanie Toti